THOMAS M. TUCKER ET AL. *v.* MARY M. WHITEHEAD.

1. **WILL.** *Devisavit vel non. Witness. Proponent. Contestant. Legatee.*
   At the trial of an issue *devisavit vel non* the contestant, or the proponent although the principal legatee, can testify in support of the will.

2. **SAME.** *Mutilation. Testator's declarations. Res gestæ.*
   Mutilation of the will by the testator is sufficient evidence of revocation, and it is doubtful whether his declarations, other than those which accompany the act, are admissible in evidence.

3. **SAME.** *Spoliation. Declaration by testator of his intentions.*
   If in such a case there is doubt whether the testator or a spoliator mutilated the will such declarations, though no part of the *res gestæ*, are admissible in order to prevent the defeat of the deceased person's intentions by accident or fraud.

4. **SAME.** *Probate in common form. Effect as evidence under Code 1871.*
   Probate in common form of the will under the Code of 1871 is inadmissible in evidence at the trial of the issue *devisavit vel non*, and is not to be accepted as establishing *prima facie* the validity of the will.

5. **SAME.** *Probate in common form under Code 1880. Statute not retroactive.*
   The subsequent statute, Code 1880, § 1969, which makes probate of a will in common form *prima facie* evidence of its validity in all future

contests, does not apply to such probates as were had before its enactment.

6. SAME. *Instructions. Confusing charges. Inapplicability.*
   Unintelligible and confusing charges are improper ; and instructions inapplicable to the evidence, as, for instance, on insanity or nuncupative wills, when the only question is the author of a mutilation, should be refused.

APPEAL from the Chancery Court of Clay County.

Hon. F. A. CRITZ, Chancellor, having been of counsel in this case, Hon. T. B. Graham presided by interchange.

Upon the evidence stated in the opinion, the Chancellor, over the appellants' objection, gave the following instructions for the appellee : " (1) The issue to be determined by the jury is the validity of a will which has heretofore been duly admitted to probate as the last will and testament of P. W. Tucker, deceased, by this court. Such probate is *prima facie* evidence of the validity of the will, and the contestants are compelled, in order to sustain their claim that the will so admitted to probate is not the last will and testament of the deceased, to prove by legitimate evidence to the satisfaction of the jury that such will is not in truth and in fact the last will of said P. W. Tucker, deceased. It is not enough for the contestants by their proof to render it doubtful or uncertain whether this will is the last will of said P. W. Tucker, but they must go further, and by their proof satisfy the minds of the jury by a preponderance of evidence that it is in fact and in truth not the last will of P. W. Tucker." " (2) It devolves on the contestants to satisfy the minds of the jury by a preponderance of evidence that the will heretofore admitted to probate by this court as the last will of P. W. Tucker is not the last will of said Tucker, and, unless the contestants have done so, the law is for the proponent of the will, Mary M. Whitehead, and the jury will so find." " (3) The court charges the jury that if they believe from the evidence that there is ground for a reasonable inference that the will which has been probated as the will of P. W. Tucker was in existence at the time of the death of said P. W. Tucker, and was then subscribed with his name, the presumption that P. W. Tucker tore his name off will not arise, and the verdict of the jury should be for

Miss Whitehead." "(4) If the jury believe from the evidence that Thomas M. Tucker, or any one else, had access to the writing admitted to probate as the will of P. W. Tucker, after his death and before its existence was known to others, and that it was presumably destroyed by said Thomas M. Tucker, or any other person who may have so had access to said writing, the law will not presume that P. W. Tucker tore his name off the writing, and the jury will find for the proponent, Miss Whitehead, unless the jury are satisfied by other evidence that P. W. Tucker did, in his lifetime, tear his name off the will."

The appellants asked and the court refused the following charges: "(1) The burden of proof in this case is on the proponent, Miss Mary M. Whitehead, and she must establish that the writing in controversy is the last will and testament of P. W. Tucker, and was not revoked or cancelled by him; and unless this is proved from the evidence in this case to the satisfaction of the jury they will find for the contestants." "(2) The will and probate thereof are not *prima facie* evidence in this cause, as said will was probated and proceedings in this case commenced before the Code of 1880 went into effect." "(4) If Mrs. Mildred Whitehead, the proponent's mother, took the keys of P. W. Tucker immediately after his death, and kept them, and she and Thomas M. Tucker hunted for the will together, and it was found first by Mrs. Whitehead among the private papers of the deceased, in his private desk, and she was and is desirous that her daughter should come in under the will, then the presumption is that P. W. Tucker tore off his own name." "(7) A nuncupative or verbal will can only be made while the person is on his death-bed; all other wills must be in writing, and no declarations of the deceased that he had made a will, or intended to give his property to a particular person, will have any effect, unless the testator did in fact have a written will, and left the same uncancelled at his death." "(11) The proponent in this suit, Mary M. Whitehead, is endeavoring to prove that the paper in controversy is the last will and testament of P. W. Tucker, and it devolves on her to prove it, clearly to the satisfaction of the jury, and unless she has done so the jury will find for the contestants." "(12) If from all the evidence in

this case it is left doubtful in the minds of the jury whether the paper in controversy is the last will of P. W. Tucker, they will give the doubt against the will, as they must be satisfied that the paper is in truth and fact the last will of said Tucker."
" (13) The proponent, Miss Whitehead, alleges that the paper in controversy is the last will of P. W. Tucker, and this is denied by the contestants who are resisting this claim, and if the jury believe from the evidence that Miss Whitehead has not made out her claim, they will simply say, ' We, the jury, find for the contestants.' "   " (14) Declarations of an alleged testator about making or destroying or mutilating a will, unless made at the time of the making, destruction, or mutilation of the will, so as to form part of the *res gestæ*, are not admissible to establish or to invalidate the alleged will, and are only admissible to show the sanity of the testator or characterize an act of destruction or mutilation."   " (15) The declarations of P. W. Tucker, deceased, introduced in this case, as to his intentions about the disposition of his property or his making, or destroying or mutilating a will, cannot be considered by the jury as establishing the making or tearing of a will; that can only be considered by them as showing his sanity or insanity, unless made at the time of the making, destruction or tearing."   " (16) The proponent, Miss Mary M. Whitehead, must prove in this case, to the satisfaction of the jury, that P. W. Tucker was of a sane mind, and capacitated to make a valid will, at the time of the alleged making of the will in this case."

*Barry & Beckett*, for the appellants.

1. Ruling that the probate of the will in common form according to Code 1871 was admissible as proof was erroneous, and charging the jury that it was *prima facie* evidence in this controversy was an injustice to the appellants, who had no opportunity to contest it.   Code 1880, § 1970, provides for objection to the probate, but this privilege was not accorded by the former statute.   Under Code 1880, § 1969, the probate has no force which it did not possess originally.   This statute is not retroactive.   It does not purport to be so, and in view of the injustice which would result, should not be so construed.

2. The proponent of the will who was the legatee was not a competent witness. Code 1871, § 758. A legatee, if a subscribing witness, cannot testify without forfeiting the legacy. Code 1871, § 1101; Code 1880, § 1973. The claim of an heir originates after his ancestor's death, but that of a legatee during his lifetime; and the latter, under the statute, cannot testify to establish such claim. It cannot be held that the legatee is competent because not a subscribing witness, for if she were, this fact would add to her credibility rather than detract from it.

3. Declarations of the testator were improperly admitted. If these declarations were admissible at all, it was only on the ground that they were contemporaneous with the act complained of, or testified about, and were so connected with it as to form part of the *res gestæ*, or were declarations evidencing the workings of a sane or an insane mind. In other words they could only be introduced as part of the *res gestæ*, or as showing the sanity or insanity of the testator, and not to prove the making of the will itself. The court was asked in the contestants' fourteenth and fifteenth charges to confine the jury in the consideration of these declarations to these two points, and refused to do so. *Waterman* v. *Whitney*, 11 N. Y. 157; *Jackson* v. *Betts*, 6 Cowen, 377; *Bibb* v. *Thomas*, 2 W. Black. 1043; *Doe* v. *Perkes*, 3 B. & Ald. 489; *Dan* v. *Brown*, 4 Cowen, 483; *Boylan* v. *Meeker*, 28 N. J. L. 274; *Bates* v. *Bates*, 27 Iowa, 110.

4. The court erred in its action on the instructions. Rejecting the seventh asked by the contestants gave force to the former error. Refusal of the eleventh, twelfth, thirteenth, and sixteenth, was also error. Even conceding that the probate of the will was *prima facie* evidence, the proponent had only introduced in evidence this probate and rested. Under Thomas M. Tucker's testimony, every shadow of the *prima facie* case vanished. The fourth for the contestants should have been given. The first and second charges for the contestants denying the *prima facie* character of the probate were improperly refused, and the first and second of the proponent affirming it were erroneously given. The proponent's third and fourth charges do not enunciate the law correctly. They are so

framed as to mystify and mislead the jury, and should have been refused. *Mangum* v. *Finucane*, 38 Miss. 354.

*J. E. Leigh*, on the same side.

1. The Chancellor erred in admitting the probate of the will in common form as *prima facie* evidence of its validity. The proceeding was inaugurated under the Code of 1871, in June, 1880, before the Code of 1880 went into operation. Under both Codes the burden of proof is on the proponent of the will. Code 1871, § 1099; Code 1880, § 1971. This court decided in *Edwards* v. *Gaulding*, 38 Miss. 118, that the record of the probate of a will in common form, being *ex parte* and made without notice to the heirs, is not admissible in evidence, on the part of the executor, in a trial of an issue *devisavit vel non*. Has this rule been changed by Code 1880, § 1969, so far as regards suits then pending? We think by the express limitation embraced in § 4 of this Code it has not. No law will be construed to have a retrospective effect, unless such intention is manifest. *Hooker* v. *Hooker*, 10 S. & M. 599; *Garrett* v. *Beaumont*, 24 Miss. 377. It is true that the law provides a new remedy, but there is nothing to show that the legislature intended to make it retroactive. Probate of a will in common form, " is an incipient step in the proceedings taken in order to give the court jurisdiction, and is not conclusive upon the heirs-at-law." *Cowden* v. *Dobyns*, 5 S. & M. 82; *Garner* v. *Lansford*, 12 S. & M. 558; *Wall* v. *Wall*, 30 Miss. 91; *Tucker* v. *Whitehead*, 58 Miss. 762. The statute must be construed to have no retrospective reference, and to apply only to wills thereafter admitted to probate. If the statute impairs any vested right, it will be retroactive and void. Sedgwick Stat. and Con. Law, 188, 194, 196; *Boyd* v. *Barrenger*, 23 Miss. 269; *Carson* v. *Carson*, 40 Miss. 349, 351. At the time the will was admitted to probate, such probate was not evidence against the heirs in an issue *devisavit vel non*, it was an *ex parte* proceeding, and the Chancellor in admitting such probate could do so without hesitation, knowing that it did not affect persons wishing to contest the will.

2. The testimony of the appellee in the court below was clearly inadmissible. The statute (Code 1871, § 758; Code 1880, § 1602), recites, " No person shall testify as a witness to estab-

lish his own claim of any amount for or against the estate of a deceased person, which originated during the lifetime of such deceased person." The admission of Miss Whitehead to establish her claim under the alleged will was a palpable violation of this statute. The word " claim " applies to any right asserted, as was expressly decided in *Jacks* v. *Bridewell*, 51 Miss. 881. Code 1871, § 758. This term was held in *Lamar* v. *Williams*, 39 Miss. 342, to include any demand or right asserted and relied on in the action against the estate. The interpretation here given to the statute is conclusive as to the inhibition, and the appellee was not entitled to testify to maintain her claim to the property under the alleged will. *Green* v. *Mizelle*, 54 Miss. 220 ; *Rothschild* v. *Hatch*, 54 Miss. 554. This rule has been held to apply even to one who had transferred all interest. *Jones* v. *Sherman*, 56 Miss. 559.

3. If the testator has torn off or effaced his seal or signature at the end of a will, the court will infer an intention to revoke the whole will. 1 Williams on Executors, 110 ; Lomax on Executors, 44. The presumption of law *prima facie* is that such acts are done *animo revocandi*. The tearing off of the signature is a revocation of the will. 1 Redfield on Wills, 313, 314, n. 36 ; 1 Jarman on Wills, 161 and n. 1, 132 ; *Avery* v. *Pixley*, 4 Mass. 460 ; *Brown* v. *Thorndike*, 15 Pick. 388, 408. The slightest act of tearing will be sufficient. *Bohanon* v. *Walcot*, 1 How. 336. In *Bigelow* v. *Gillott*, 123 Mass. 102, it is held that if a will be found in a testator's possession mutilated, it will be presumed that it was done by the testator himself, and that it was done *animo revocandi*. Parol evidence is admissible as to the intention of the testator. *Patterson* v. *Hickey*, 32 Ga. 156. Where a will was found in the private desk of a testator, duly executed with the signature cut off, it was held that it was the act of the testator *animo revocandi*, and that previous acts of revocation were persuasive acts *animo revocandi*. *Smock* v. *Smock*, 11 N. J. Eq. 156. The slightest tearing or burning of a necessary part of a will, accompanied by evidence *aliunde* of an intention to revoke, is a revocation. *Johnson* v. *Brailsford*, 2 Nott & M'Cord, 272. If one who has made a will cuts or tears off his signature, the law will presume an intention to revoke the will.

*Youse* v. *Forman*, 5 Bush, 337, 339. The fact that a will was found in a tin box of the testatrix, with the seal torn out, and the names of herself and witnesses obliterated, has been held to be a revocation. *In re White*, 25 N. J. Eq. 501. The testator may revoke his will at any time. *Timon* v. *Claffy*, 45 Barb. 438. *Revocavit vel non* is a question of intention, and all facts showing the intention may be received in evidence. *Jackson* v. *Holloway*, 7 John. 394; *Garrett* v. *Dabney*, 27 Miss. 335; *Read* v. *Manning*, 30 Miss. 308. Where a will is revoked expressly or by implication, it is destroyed and it requires express and direct proof to revive. *Bohanon* v. *Walcot*, 1 How. 336. The declarations of the deceased, that he had destroyed the will by tearing his name from it, are *conclusive* as to the act having been done by the deceased *animo revocandi*, and cannot be rebutted by any mere suspicion or presumption that it was done by some one else. *Patterson* v. *Hickey*, 32 Ga. 156; *Lawyer* v. *Smith*, 8 Mich. 411; *Sweet* v. *Sweet*, 1 Redf. (N. Y.) 451; *Johnson* v. *Brailsford*, 2 Nott & M'Cord, 272.

*F. A. Critz*, for the appellee, argued orally and filed a brief.

1. The claim against the estate of a deceased person, as to which the statute prohibits the owner to testify, is one originating during the lifetime of such deceased person. Code 1880, § 1602. The claim of the devisee did not " originate during the lifetime " of the testator. The will was ambulatory until death, and up to that period the testator was the absolute owner of the property in controversy, and the will had no binding force or effect. The legatee's or devisee's claim originates after death. A man can no more have a devisee during life than he can have an heir. The Supreme Court of Massachusetts, under a statute similar to ours (Mass. Gen. Stats. c. 131, § 14), has decided that the beneficiaries under a will are competent witnesses in favor of the will in a contest like this. *Shailer* v. *Bumstead*, 99 Mass. 112. The Supreme Court of Missouri has decided the same question the same way. *Garvin* v. *Williams*, 50 Mo. 206. In the celebrated English case of *Finch* v. *Finch*, L. R. 1 P. & D. 371, a case similar in many respects to the one under consideration, the will was established upon the testimony of the devisee alone,

except that another witness was introduced to prove the contents of the will, and she testified as to the declarations of the testator. The same can be said of the leading and celebrated case of *Sugden* v. *St. Leonards*, 1 P. D. 154.

2. It is universally conceded by the authorities that a will cannot be established by showing the mere declarations of the testator. Nor can the revocation of a will once in existence be established by mere proof of declarations. But where there is an *equivocal act*, such as the tearing up of a will, or where the will is lost, or is found after the death with the name torn off, as in this case, the settled rule seems to be that the declarations of the testator may be resorted to, to remove the doubt thus raised, as to whether the will has been revoked or not. 2 Am. Lead. Cas. 490 ; 2 Wharton Evid. § 895. Where a will, duly executed, remains in the custody of the testator, but cannot be found after his death, the law *presumes* that the will has been destroyed by the testator, with the intention of revoking it. But this presumption may be rebutted by evidence tending to prove a contrary intention, *e. g.*, by declarations of the testator showing an intention to adhere to the will. 2 Best Evid. § 401 ; *In Goods of Colberg*, 2 Curteis Eccl. 832    *Whiteley* v. *King*, 17 C. B. N. s. 756 ; 2 Am. Lead. Cas. 517 ; *Tynan* v. *Paschal*, 27 Texas, 286 ; *Patterson* v. *Hickey*, 32 Ga. 156 ; *Lawyer* v. *Smith*, 8 Mich. 411, 423, 424 ; *Harring* v. *Allen*, 25 Mich. 505 ; *Betts* v. *Jackson*, 6 Wend. 173, 188    *Pemberton* v. *Pemberton*, 13 Ves. 290 ; *Reel* v. *Reel*, 1 Hawks (N. C.), 248 ; *Finch* v. *Finch*, L. R. 1 P. & D. 371 ; 6 Wait's Actions and Defences, 385 ; *Youndt* v. *Youndt*, 3 Grant's Cases, (Penn.) 140 ; 1 Jarman on Wills, 133, note 1 ; *Smiley* v. *Gambill*, 2 Head (Tenn.), 164. When a will is missing at the death of the testator, or is found in a mutilated condition, his declarations will be admissible to strengthen or rebut the inference that it had been destroyed by him. The question under these circumstances is one of custody ; whether the testator kept the paper executed by him, as containing his last wishes with regard to the disposition of his property. If he did, the presumption that it was destroyed by him is repelled, and it becomes necessary to ascribe the disappearance or mutilation of the instrument to other causes. 2 Am. Lead. Cas. 490,

491, 512, 513; *Lawyer* v. *Smith*, 8 Mich. 411; *Durant* v. *Ashmore*, 2 Rich. (S. C.) 184; 2 Wharton Evid. § 900; *Davis* v. *Davis*, 2 Addams Eccl. 223; *McBeth* v. *McBeth*, 11 Ala. 596; *Weeks* v. *McBeth*, 14 Ala. 474; *Minkler* v. *Minkler*, 14 Vt. 125; *Sugden* v. *St. Leonards*, 1 P. D. 154. And still stronger reasons there are in this case for the enforcement of the rule, on account of Thomas M. Tucker's intermeddling with the papers of the deceased. 2 Am. Lead. Cas. 517; *Steele* v. *Price*, 5 B. Mon. 58; *Sugden* v. *St. Leonards*, 1 P. D. 154; *Gaines* v. *Hennen*, 24 How. (U. S.) 553; *Jones* v. *Murphy*, 8 Watts. & Serg. 275, 299; 3 Phil. Evid. 608; *Youndt* v. *Youndt*, 3 Grant's Cases (Penn.), 140. The declarations of the testator should have been permitted to go to the jury for what they were worth under the circumstances. *Lawyer* v. *Smith*, 8 Mich. 411, 423; *Harring* v. *Allen*, 25 Mich. 505; *Betts* v. *Jackson*, 6 Wend. 173; *Patterson* v. *Hickey*, 32 Ga. 156.

3. The probate of the will in common form is *prima facie* evidence on the issue *devisavit vel non*, although it was probated prior to the Code of 1880. It is clear that this change of the rule of evidence, by which such probate is made *prima facie* evidence of the validity of the will, does not infringe upon any vested right. It slightly affects the remedy, but proceedings under the new Code secure all the rights of the contestants, and were clearly contemplated by the lawmakers. Code 1880, §§ 4, 8, 1969. Laws which change the rules of evidence relate to the remedy only. Cooley Const. Lim. 288. It must also be evident that a right to have one's controversies determined by existing rules of evidence is not a vested right. And the legislature may change the burden of proof at will without affecting any vested right. Cooley Const. Lim. 367, 368, and authorities cited; *Hand* v. *Ballou*, 12 N. Y. 541; *Forbes* v. *Halsey*, 26 N. Y. 53; *Hickox* v. *Tallman*, 38 Barb. 608.

4. The charges are not erroneous. The first and second for the proponent simply announce the doctrine that the probate of the will is *prima facie* evidence of its validity, as provided by Code 1880, § 1969. And in further support of these charges we refer to *Brown* v. *Griffiths*, 11 Ohio St. 329;

6 Wait's Actions and Defences, 389; *Banning* v. *Banning*, 12 Ohio St. 437, 443. The first and second charges for the contestants, which were refused, announce the opposite rule, that is to say, that the probate of the will is not *prima facie* evidence, and, of course, said charges were properly rejected. The proponent's third was rightly given, and the fourth charge given for the proponent is supported by authorities as well as the reason and facts of this case. It is obvious that when the instrument passes out of the hands of the testator into that of an attorney or agent, the presumption that it was destroyed by him will give place to another, throwing the burden of proof on those who allege a revocation. 2 Am. Lead. Cas. 512, 517; *Hildreth* v. *Schillenger*, 10 N. J. Eq. 196; *Jones* v. *Murphy*, 8 Watts & Serg. 275; *Finch* v. *Finch*, L. R. 1 P. & D. 371. Rejecting certain charges asked by the contestants was proper, in view of the principles heretofore discussed.

*White & Bradshaw*, for the appellants, in reply.

Our statute is conclusive of the main question in this controversy. Decisions cited by opposing counsel are inapplicable. The case of *Shailer* v. *Bumstead*, 99 Mass. 112, depends upon the Massachusetts statute (Mass. Gen. Stats. c. 131, § 14, p. 673), which differs from our Code as widely as the facts of that case from this. English statutes and the statutes of Missouri and other States, under which the remaining cases relied on by counsel were decided, have no resemblance to our law. Examination of such cases as *Finch* v. *Finch*, L. R. 1 P. & D. 371, and *Sugden* v. *St. Leonards*, 1 P. D. 154, will not disclose a principle or analogy bearing on this controversy.

*L. F. Bradshaw* made an oral argument for the appellants.

CHALMERS, J., delivered the opinion of the court.

A few days after the death of P. W. Tucker, there was found among his private papers a will bearing date about eighteen months before his death, perfect in all its parts, except that the name had been torn from it. By its provisions a considerable portion of his estate was devised to his niece, Miss Mary M. Whitehead, and the residue directed to be equally divided among his brothers and sisters. The deceased was a bachelor, and his brother, Thomas M. Tucker, was known to have had

free access to his papers during the period intervening between his death and the finding of the mutilated will. The niece, believing that the mutilation had occurred after death, and by the hand of a spoliator, offered the will for probate, and upon proof satisfactory to the clerk and the Chancellor, it was duly admitted to probate in common form in the Chancery Court of Clay County. Subsequently a portion of the heirs-at-law, including the brother towards whom suspicion pointed as the mutilator of the document, instituted this proceeding for an issue of *devisavit vel non.* A large mass of testimony was adduced on either side, which resulted in a verdict in favor of the validity of the will, and from a decree in accordance with this verdict this appeal is prosecuted by the contestants. The evidence was conflicting, and if no error of law was committed we should not feel called upon to disturb the verdict. We will examine the more important errors assigned.

First, there was no error in permitting the proponent, who was the principal legatee under the will, to testify in support of it. *Kelly* v. *Miller*, 39 Miss. 17. The point is decided the same way, though under statutes the phraseology of which is not identical with ours, in Massachusetts and Missouri. *Shailer* v. *Bumstead*, 99 Mass. 112 ; *Garvin* v. *Williams*, 50 Mo. 206. In issues of this character, it seems that the proponents and the contestants of the will, are alike competent witnesses. The contestant was admitted to testify without objection in *Mullins* v. *Cottrell*, 41 Miss. 291, and though we find the point expressly decided in very few cases, yet an examination shows that it has been quite generally done without objection, both in this country and in England.

Second, there was no error in admitting the parol declarations of the deceased, relative to the fact of his having made a will and of the contents of it, and of his affection for his niece, and of his testamentary intentions and desires, and of what he had done to make them effective. These declarations extended from the date affixed to the will up to within four days of the testator's death, a period of eighteen months. There are few questions in the law upon which the authorities are more hopelessly in conflict than upon the admissibility of the declarations of a deceased testator in support or in rebuttal

of a supposed revocation of a testamentary paper. It has engaged the attention and elicited the logic of the greatest jurists who have adorned the bench of this or any country. Against the admissibility of such evidence are to be found the names of Kent and Story and Livingston, and in favor of it those of Walworth and Ruffin and Lumpkin and Cooley. Certainly we can hope to add nothing to the strength of an argument, on either side, which has already been exhausted by such men as these. Whatever may be the true rule where the act which the law accepts as itself evidence of a revocation is undoubtedly shown to have been done by the testator, we think it clear that testimony such as was offered here should always be received where, as in this case, it is uncertain whether the act was committed by the testator, or was the unauthorized or criminal act of a spoliator. The law makes the destruction or mutilation of a will by the testator sufficient evidence of a design to revoke it, and whether any declarations by him, other than those which accompany the act and thereby become a part of the *res gestæ*, should be receivable in evidence, to contradict or explain the act, may well admit of doubt; but where the fact that he was the author of the destruction or mutilation is itself first presumed, from the place where the paper is found, and upon this presumption there is built up the further presumption that it was done *animo revocandi*, it would seem that something more than presumptions should be let in. In such a case it is the part of wisdom to open the doors as wide as possible for the reception of every species of evidence at all calculated to advance the discovery of truth, since not to do so must in a great number of cases result in defeating the will of the deceased by accident or fraud. The evils which may spring from the introduction of parol proof in such a case are less than those which must be wrought by its exclusion. We append a few of the authorities permitting the introduction of the declarations of the decedent in this class of cases, an examination of which will lead to those holding the opposite view. In the first case cited the argument on both sides is well summed up in the principal and in the dissenting opinions. *Collagan* v. *Burns*, 57 Maine, 449; *Lawyer* v. *Smith*, 8 Mich. 411; *Weeks* v. *McBeth*,

14 Ala. 474; *Patterson* v. *Hickey*, 32 Ga. 156; *Steele* v. *Price*, 5 B. Mon. 58; *Youndt* v. *Youndt*, 3 Grant's Cases (Penn.), 140; *Tynan* v. *Paschal*, 27 Texas, 286.

Third, there was error in admitting on the trial of the issue of *devisavit vel non* the record of the probate of the will in common form, and in instructing the jury that such probate was to be accepted *prima facie* as establishing its validity. The probate had taken place under the Code of 1871, by the provisions of which the proceeding was wholly *ex parte*, and not thereafter receivable in evidence in any future contests concerning the will. *Edwards* v. *Gaulding*, 38 Miss. 118, 163. By § 1969 of the Code of 1880, the probate of a will in common form is expressly made *prima facie* evidence of its validity in all future contests; and, while we do not doubt the power of the legislature to apply this new rule of evidence to such probates as had already been had, we do not think that such was their intention here. Under the Code of 1880, all persons interested may become parties to the proceeding for a preliminary probate, and the proponent of the alleged will is compelled to cite all those who have availed themselves of the provisions of § 1970 by filing a *caveat* against the probate. It seems eminently proper that a probate which takes place under such a system should be accepted as *prima facie* correct in all subsequent contests, whether in fact the opponents of the will have made themselves parties or not, since having the right by an easy process to compel the opposite party to cite them, they cannot complain if it has not been done. But to apply the new rule to a procedure already completed under a system which gave them no such right might work the greatest injustice, and nothing short of an express legislative declaration could warrant us in giving such a construction to the statute. Not only does the present law make the preliminary probate *prima facie* evidence of the validity of the will, but it permits in all future contests the proof taken on such preliminary probate to be read in evidence. We can scarcely suppose that the legislature intended that a law like this should apply to a procedure already past, and in which opposing parties had no opportunity to be heard.

Fourth, the views announced sufficiently indicate perhaps

the action which should have been taken upon the charges asked on either side. The burden of proof was on the proponent throughout, and the jury should have been so informed. The third instruction given for the proponent, if we understand it, announced that if the jury thought from the evidence that there was "a reasonable inference" that the testator had not torn his name from the will, the law raised no presumption that he had done so, — a proposition which it seems to us was as harmless to the contestants as it was useless to the proponent, since it was but the announcement of a self-evident truism. We confess our inability to understand the fourth instruction given for the proponent. It seems to declare that if the jury believed from the evidence that the name was "presumably" torn off by the brother of the testator, or by any other person, "the law will not presume" that the testator did it. Such an instruction could only confuse and not enlighten the jury, and should not have been given. The first, second, eleventh, twelfth and thirteenth instructions asked by the contestants, should have been given. The fourth, seventh, fourteenth, fifteenth and sixteenth were properly refused. There was no question of a nuncupative will or of the sanity of the testator before the jury, and therefore the seventh and sixteenth instructions asked were wholly inapplicable.

*Reversed and a new trial awarded.*