In the matter of the WILL of NANCY EVANS, deceased. MARY FRIAR and J. B. BODDIE, propounders, IRA T. EVANS, SALLIE A. BARNES and husband C. E. BARNES, and FANNIE ENROUGHTY and husband W. N. ENROUGHTY, Caveators.

(Decided October, 1898).

### Wills—Undue Influence, Evidence of.

Where a testatrix, having two children, a daughter Mary, who lived with her, and a son Ira, who did not—executed a will in 1882, in existence at her death in 1895, but not found afterwards, which gave one-half of the estate to Mary and the other half to a trustee for the children of Ira—he being dissipated—and a few years before her death, she expressed to some of her friends a desire to change her will, and the following are the strongest expressions appearing in the evidence: When her son handed her the will, she said, "Son, why don't you do what I told you?" He said, "It is yours, not mine." She took it, and said "The hot stove wasn't gone anywhere." To another witness she said she wanted him to write one for her, and he agreed to do so—she said "She would have to run away from Mary, who would not let her go." She said she had a will made but it was not hers, that it was

Mary's will—and never mentioned the matter again to that witness, but once.

*Held*, that the evidence was not sufficient to allow the jury to find that the testatrix believed the contents of the will to be different from what they really are, or to prove any other circumstances which tend to show that it was not her will when made, or any fraud on the part of Mary Friar (her daughter)

ISSUE of *devisavit vel non* tried before *Bryan, J.,* and a jury at Spring Term, 1898, of NASH Superior Court in a proceeding to set up and prove the last will and testament of Nancy Evans, deceased, alleged to have been destroyed after her death in 1895.

The alleged copy of the alleged will of 1882 propounded in the Probate Court is as follows:

Item 1. To my daughter, Fannie Enroughty, I give one feather bed.

2. To my daughter, Sallie Ann Barnes, I give one loom, which she now has in her possession.

3. To my daughter, Mary Friar, I give all of my other personal property of every description.

4. It is my will and desire that the lot on which I now live to be equally divided between my daughter Mary Friar, and the children of my son, Ira T. Evans; but for fear that my son, Ira T. Evans, shall spend his part, I give, devise and bequeath to my friend I. B. Boddie in trust and to the use of the children of my son, Ira. T. Evans, four hundred dollars.

5. But as my daughter, Mary Friar, occupies the said house and lot, and not wishing to deprive her of a house by selling said house and lot, I have valued the house and lot at eight hundred dollars in lieu of selling the same. I charge the lot with four hundred dollars to the use of the children of my son Ira T. Evans; and if my daughter, Mary Friar, shall pay to I. B. Boddie the said sum of four hundred dollars to the use of the children of my son, Ira T. Evans, then she is to hold the

undevised house and lot in fee simple forever, free and discharged.

6. I do nominate, constitute and appoint I. B. Boddie executor, this my last will and testament.

NANCY (her mark) EVANS.

Witness: E. S. F. GILES,
JOHN T. MORGAN.

The issue transferred by the Clerk for trial:

"Is the paper writing a true copy of the last will and testament of Nancy Evans, or not?"

The caveators requested his Honor to submit the following issues instead of the above:

(1) Did the said Nancy Evans die leaving a last will and testament?

(2) Is said paper writing a true copy of the same?

(3) Was said paper writing destroyed after the death of said Nancy Evans?

This was refused by his Honor, who submitted the issue certified by the Clerk.

Caveators excepted.

The evidence was voluminous and somewhat conflicting, but was all admitted without objection and recapitulated to the jury. The strongest expressions occurring therein and urged by the caveators are cited in the opinion of the Chief Justice, as not contravening the special instruction given by the Court at the instance of the propounders, and excepted to by the caveators, as follows:

There is no evidence before the jury that there was any undue influence or coercion of Nancy Evans on the part of Mary Friar or any other person, in regard to the execution of the will.

This exception, with others, made by the caveators to

the charge of the Court is regarded as untenable.

The jury responded "Yes" to the issue submitted. Judgment was rendered establishing the paper writing transmitted to this Court by the Clerk, and every part thereof to be a true copy of the last will and testament of Nancy Evans, deceased, and ordering a *procedendo* to the Clerk, &c.

From which judgment the caveators appealed.

*Messrs. Jacob Battle* and *Cook & Cooley*, for caveators (appellants).

*Messrs. F. S. Spruill, H. G. Connor* and *B. H. Bunn*, for propounders.

FAIRCLOTH, C. J.: This was a proceeding to set up and prove the last will of Nancy Evans, the propounders alleging that the will was made in 1882 and was in existence at her death in 1895 and was destroyed by her son, Ira, after her death. The caveators contend that the execution of the will was procured by the undue influence of her daughter, Mary Friar, one of the beneficiaries; the will gave one half of the estate to said Mary and the other half to a trustee for the children of said Ira, and that the testatrix before her death desired to change her will. All the evidence was admitted without objection, and there are several exceptions to the ruling and charge of his Honor. They are all untenable, and the only one that we had seriously to consider was the 10th, in relation to the averment of undue influence at the execution of the will.

Mary cared for her mother, and Ira was dissipated, they being her only children. A few years before her death, the testatrix expressed to some of her friends a desire to change her will. The following are the strongest expressions found in the evidence: When her

son handed her the will, she said "Son, why don't you do what I told you?" He said "It is yours, not mine."

She took it and said, "The hot stove wasn't gone anywhere." To another witness she said she wanted him to write one for her, and he agreed to do so. She said "She would have to run away from Mary . . . . Mary would not let her go . . . . " She said "She had a will made but it was not hers, that it was Mary's will." She never mentioned the matter again to that witness, but once. The Court told the jury: "There is no evidence before the jury that there was any undue influence or coercion of Nancy Evans on the part of Mary Friar or any other person in relation to the execution of the will."

The declarations of the testatrix, made after the will was executed, fail to show a single word or act of Mary Friar tending to show any undue influence in making the will, and if she had made the will favorable to Mary it was her deliberate act, and for aught that appears she made it as she wanted it, at that time. If the testatrix afterwards desired to make a change, it was her privilege to do so. The verdict excludes the contention that the will was changed or destroyed, and finds that the script propounded was a true copy.

Our conclusion is that the evidence was not sufficient to allow the jury to find that the testatrix believed the contents of the will to be different from what they really are, or to show *any other* circumstances which tend to show that it was not her will when made, or any *fraud* on the part of Mary Friar, and that the Court properly so instructed the jury. *Reel* v. *Reel*, 1 Hawks, 248; *Howell* v. *Borden*, 3 Dev., 446; 27 Am. & Eng. Enc., 505, 6. There is no error.

Affirmed.