The paper-writing executed by F. M. Shelton in 1902 was offered in evidence as his will. The following words were written in ink on the margin thereof, to wit:
"This will I this day make void and of no effect. 16 January, 1905.
F. M. SHELTON."
The contention of the contestant was that said words revoked the paper-writing as a will. Evidence was introduced by the propounder and contestant. Many exceptions were taken by contestant to the admission and exclusion of testimony, to the charge of the Court and other rulings of his Honor.
The following issue was submitted to the jury: "Is the paper-writing propounded for probate, and every part thereof, the last will and testament of F. M. Shelton?" to which the jury answered "Yes." Upon this verdict the Court gave judgment that the paper-writing, excluding the words on the margin thereof, was the last will and testament of F. M. Shelton. The caveator appeals.
We will not discuss seriatim the twenty-seven exceptions set out in the record, but will consider only such (220) phases of the case as we deem necessary. The learned counsel for the caveator in an able argument and carefully prepared brief has pointed out many alleged errors in the record, none of which are, in our opinion, sufficiently serious to warrant another trial of the issue. It is plain that the testator did not revoke the will by "canceling, tearing, or obliterating the same." It seems to be generally held that cancellation, obliteration, or erasure made after the execution of a will, which does not in fact destroy some portion of the material substance of *Page 186 
the will, does not constitute a revocation thereof. Lewis v. Lewis, 2 Watts S., 455; Ladd Will, 60 Wis. 188; Clark v. Smith, 34 Barb. (N. Y.), 140;Gardner v. Gardner, 65 N. H., 230; Wolf v. Bollinger, 62 Ill. 368; Matterof Miller, 50 N.Y., Misc., 70; Howard v. Hunter, 115 Ga. 357; Underhill on Wills, sec. 229; Redfield on Wills, star page 318.
The words written on the blank margin of this will do not touch any part of the will proper. It is unnecessary, however, to discuss this feature of the case, because the jury have in effect declared that the writing alleged to have been made by the testator purporting to revoke his will was not in fact made by him.
It is contended that his Honor erred in permitting the propounder to prove by Mattie Shelton the declarations of the testator made the day before he died, tending to prove that testator did not execute or write the alleged revocation and referring to and speaking of his last will. His death occurred 25 January, 1905. The alleged revocation is dated 16 January, 1905. These declarations did not tend to explain the meaning of anything contained in the writing, but only to prove that it was not the testator's act. To make it a valid revocation within the language of our statute, Revisal, 3115, it is essential, among (221) other requirements, that the entire writing, including the signature, should be in the testator's handwriting, inasmuch as it is not attested by witnesses. We will not either review or undertake to reconcile the conflicting decisions upon the admissibility of such evidence. It seems to be generally held that the declarations of a testator are not competent upon the question of the interpretation of the contents of his will, but as to the admissibility of declarations made by the testator upon the question of the factum of the will the authorities are divided. This Court seems long since to have aligned itself with those favoring the admission of such evidence, and it has been so classified by other courts. In Tucker v. Whitehead, 59 Miss. 594, the Supreme Court of that State says: "There are few questions in the law upon which authorities are more hopelessly in conflict than upon the admissibility of declarations of a deceased testator in support or in rebuttal of a supposed revocation of a testamentary paper. It has engaged the attention and elicited the logic of the greatest jurists who have adorned the bench of this or any country. Against the admissibility of such evidence are to be found the names of Kent, Story, and Livingston, and in favor of it those of Walworth, Ruffin, Lumpkin, and Cooley. Certainly we can hope to add nothing to the strength of an argument on either side, which has already been exhausted by such men as these."
To the names of the great lawyers who support the admission of such evidence we will add the name of Henderson, who says in Reel v. Reel, *Page 187 8 N.C. 248: "To our minds, to reject the declarations of the only person having a vested interest and who was interested to declare the truth, whose fiat gave existence to the will, and whose fiat could destroy, and in doing the one or the other could interfere with the rights of no one, involves almost an absurdity; and (with due deference to the opinions of those who have decided to the contrary, we say it) they are received, not upon the grounds of their being a part of the (222)res gestae, for whether they accompany an act or not, whether made long before or long after making the will, is entirely immaterial as to their competency; those circumstances only go to their weight or credit with the tribunal which is to try the fact, and the same tribunal is also to decide whether the declarations contain the truth or are deceptive, in order to delude expectants and procure peace. The English books are full of cases where the declarations of the testator were received, and without any objection as to their competency;
generally the question being as to their weight."
This language is quoted by Professor Wigmore as supporting the admission of such evidence as one of the exceptions to the general rule excluding hearsay. Vol. 3, sec. 1738.
The controlling authority of this case was acknowledged in 1832 by this Court in an opinion by Judge Ruffin in the following language: "The admissibility of the evidence rejected in the Superior Court was, as a general principle at the common law, determined in Reel v. Reel. The discussion in that case was full, and the decision is to be regarded by succeeding Judges, not only with respect, but, in my opinion, as authoritative. For this reason, I must say I do not consider that question open to dispute." Howell v. Barden, 14 N.C. 443. In this case JudgeRuffin gives very cogent reasons why the evidence should be received.
The Reel case was again cited and approved in 1888 in Patterson v.Wilson, 101 N.C. 587, by Mr. Justice Merrimon, as follows: "The case of Reel v. Reel, 8 N.C. 248, cited by the learned counsel for the appellant, has no application here. That was a contest of the will then in question; the purpose was not to interpret it and ascertain its meaning. The evidence as to what was said by the supposed testator was for the purpose of showing that he did or did not execute a valid will. In such case, no doubt, the pertinent declarations of the testator (223) for proper purposes might be evidence."
The syllabus in Reel v. Reel was made and published many years before either of the cases approving it were decided, and that syllabus interprets the opinion as holding that declarations of a testator made at any time subsequent to the execution of a will which go to show that it is not his will, are admissible, and that it is the general principle *Page 188 
deducible from that case. Such is the interpretation placed upon it byJudge Merrimon, and by the accurate reporter of Patterson v. Wilson, supra, who states the law tersely and correctly when he says: "While under some circumstances the declarations of a testator are competent upon the question of the factum of the will, they are not competent upon the question of the interpretation of the contents of the will."
In Waterman v. Whitney, 11 N.Y. 168, this case (Reel v. Reel) is spoken of as a leading case on this subject and as upholding the admissibility of the testator's declaration made after the execution of the will in which he stated its contents to be materially different from what they were. Contestants offered to prove that at various times between the date of the supposed will and the death of Reel he had repeatedly mentioned the substance of the will left in the hands of Blackledge, and that according to those declarations the contents of the paper offered for probate were utterly variant from the will left with Blackledge. There were evidently two defenses set up in the Reel case, viz., undue influence and that the writing offered was not Reel's true will, but a fraud and imposition perpetrated by Blackledge. The declarations were offered in support of the latter contention. This is shown most clearly by the brief of Judge Gaston, counsel for contestants, who says: "The object of the evidence was to show by Reel's repeated declarations what he believed to be the will he had signed, in order, with the other (224) facts proved, to establish a fraud."
In the case before us the propounders have offered evidence, however strongly it may be contradicted, tending to prove that the writing on the margin, purporting to be a revocation, is a fraud and forgery. To corroborate such evidence they offered the declarations of the testator made after the date of the writing and shortly before he died, tending to show that he had not revoked or destroyed his will and that he knew nothing of such revocation. This evidence is offered to prove fraud in the factum
as much so as in Reel's case. In the Evans will case, 123 N.C. 117,Reel's case and Howell v. Barden, supra, are cited and approved. In that case declarations of the testatrix were admitted as competent, although held to be insufficient, to show that the writing offered was not her will.
Declarations of this kind are admitted as an exception to the general rule rejecting hearsay, because the testator has peculiar means of knowledge and may be supposed to be without motive to speak other than the truth. He differs from a grantor in a deed, because when his declarations are made he has not parted with his property, but retains control over the subject-matter until his death, and he must be presumed to know what disposition he has made of it. In Sugden v. St. *Page 189 Leonards, L. R. I., P. D., 154-225, Chief Justice Cockburn reasons strongly in favor of the admission of such evidence, as follows: "The testator must be taken to know the contents of the instrument he has executed. If he speaks of its provisions, he can have no motive for misrepresenting them except in the rare instances in which a testator may have the intention of misleading by his statements respecting his will. Generally speaking, statements of this kind are honestly made, and this class of evidence may be put on the same footing with declarations of members of a family in matters of pedigree." In the same case Sir George Jessel, Master of Rolls, who is regarded (225) by Professor Wigmore as the greatest English Judge of the century, declares in substance that all the reasons in favor of any exception to the hearsay rule exist in the case of a testator declaring the contents of his will. Furthermore, says he: "The Court should be anxious not narrowly to restrict the rules of evidence, which were made for the purpose of furthering truth and justice, but guided by those great principles which have guided other tribunals in other countries in admitting this kind of evidence generally, to admit it at all events in the special case we have under consideration."
We are not without support in this country. Practically the same kind of evidence was admitted in the following cases: Conoly v. Gayle, 61 Ala. 116;Patterson v. Hickey, 32 Ga. 159; McDonald v. McDonald, 142 Ind. 55;Scott v. Hawk, 77 N.W. 467; Schnee v. Schnee, 61 Kan. 643; Muller v.Muller, 108 Ky. 511; Lambies' Estate, 97 Mich. 49; Lane v. Hill, 68 N. H., 275; Beadles v. Alexander, 9 Baxter, 604. In the latter case the declarations of testator that he had signed a will were held admissible in corroboration of other evidence, as "the declaration of the only party having a vested interest to declare the truth," approving Reel v. Reel. InTynan v. Paschal, 27 Tex. 300, declarations were received to show the execution of a will and to rebut the inference of a revocation. In Sawyerv. Smith, 8 Mich. 411, the declarations of the testatrix were admitted to aid the jury in determining whether a mutilation of a will had been made by the testatrix or by some other person.
We think, so far as the administration of the law in this State is concerned, the question may be regarded as settled.
This exception to the general rule prohibiting hearsay, however, does not make competent the testimony of the witness, Mollie Beatty, by whom contestant offered to prove statements made by the testator in November, 1904, "as to how he was going to leave his property." This will was made in 1902, and there is no allegation made of (226) any fraud in the factum. It was evidently admitted during the whole course of the trial to be the testator's will, unless it had been *Page 190 
revoked by the words written on its margin. The case was tried on this theory. The declarations to Mollie Beatty could not constitute a revocation in themselves, for that must be in writing, and they were made before instead of after the date of the writing offered as a revocation. It is generally agreed that the declarations of the testator may not be received to explain, change or add to a written will, nor can it be revoked by parol. 1 Redfield on Wills, 498. We see no view in which such evidence was competent on this trial.
We have carefully considered the several exceptions to the admission of testimony in respect to the handwriting of the revocatory words. While his Honor may have erred in some instances in his rulings relating thereto, yet the alleged improper testimony was so colorless and tended to prove or disprove so little that we regard the errors as harmless.
The contestant assigns error because counsel for propounder in his argument showed the revocatory words on the margin of the will to the jury and pointed out differences in the formation of letters, etc., between the signature on the margin and the signature to the will. This was erroneous, as is held in Fuller v. Fox, 101 N.C. 119, but the contestant failed to call the Court's attention to it and took no exception at the time, as the record shows.
We have examined carefully contestant's prayers for instructions, as also his motions to set aside the verdict as ambiguous and for judgment upon the verdict as rendered, and will consider them together.
With all deference for the learned counsel for the contestant, we think they have an erroneous idea about the character of the issue, and the burden of proving the revocation, and having succeeded in impressing their view as to the latter upon his Honor, we think they cannot (227) complain of the charge to the jury. When the paper-writing purporting to be the testator's will was offered by the propounder for probate he did not necessarily or in fact offer the revocatory words written on the margin of the paper containing the will. He offered only the will dated 15 July, 1902. This must necessarily be so, for the revocation is no part of the will, and had he been compelled to offer it as a part of the will, because written on the margin of the same paper, the effect would be to destroy the very will the propounder was offering for probate. The revocation was not a cancellation technically, nor was it a mutilation, and, therefore, needed no explanation upon the part of the propounder of the will. After the propounder had offered the will and proved its execution as required by law, if the jury believed the evidence, he was entitled to a verdict to the effect that the paper-writing was the last will and testament of F. M. Shelton, unless the contestant could prove that it had been revoked. The burden of proving that the will had been legally revoked was as much upon contestant as it would *Page 191 
have been to prove undue influence, had such been the ground of contest. It was then up to contestant to go forward with his proof and to offer the revocation in evidence and to prove its execution or that it was all in testator's handwriting and found in a secure place, as required by statute. So far as the record discloses, no question seems to have been made in the Superior Court about the security of the place, and his Honor's charge plainly relieves contestant from proving that essential fact.
The case appears to have been tried solely upon the contested fact of the genuineness of the handwriting of the alleged revocation and the signature thereto. His Honor charged that "If the jury find that the paper-writing was properly executed, and the testator was sound in mind, then they should answer the issue `Yes,' unless they further find that the will was revoked by the writing on the margin of the paper. This writing puts the burden on the propounders of (228) the will to account for this — and it is not the will of the testator, F. M. Shelton, until they do so to the satisfaction of the jury. The law presumes that the will is revoked. This writing on the margin isprima facie evidence of revocation, and the propounders must rebut it." Thus the Court placed upon the propounders the burden to prove the negative facts that the revocation and signature were not in the handwriting of the testator and that it was not found in a secure place, and gave contestant the full benefit of a prima facie case. This relieved the contestant from proving at first hand any of the statutory essentials necessary to constitute a valid revocation, and puts the burden upon the propounder to disprove them all. When he proved the will, he had to disprove the revocation. While this is erroneous, we see no reason why contestant should complain, as it was done at his request. It was far more than he was entitled to.
There is plainly no ambiguity in the verdict as contended by contestant. The issue is in the form always submitted in contests growing out of the probate of wills. It is contended by contestant that, as the marginal words, "This will I this day make void and of no effect. Jan. 16, 1905. F. M. Shelton," were a part of the paper-writing, as introduced by propounder, the verdict was, therefore, ambiguous and unintelligible. The marginal words were not offered as any part of the will of the testator. The paper-writing propounded and established by the verdict as the will of F. M. Shelton is the one dated 15 July, 1902, and the marginal words are no part of it.
We have examined the record in this case with care and all the exceptions of contestant, and we find no error of which he has just cause to complain.
No Error.
Cited: In re Wellborn, 165 N.C. 639. *Page 192 
(229)