MARY COVINGTON ET AL. *v.* GODFREY FRANK ET AL.

1. STATUTES. *Exception. Construction.*

> An exception to a statute conferring a right must be strictly construed, and the person or thing excepted must be within the letter and spirit of the exception.

2. SAME. *Code* 1892, §§ 1738, 1740. *Witnesses. Estate of decedent.*

> In a suit by a creditor of a deceased person to foreclose a mortgage, persons whose heirship is denied are competent witnesses to prove relationship. They are within code 1892, § 1738, author-

izing interested persons to testify, and are without code 1892, § 1740, excepting from the previous section those who seek to establish their own claims to or defenses against the estate of a deceased person which originated during the lifetime of the decedent.

3. Same. *Heirship. When right originates.*

　　The right of an heir to the estate of a deceased person does not originate in the lifetime of the decedent.

From the chancery court of Bolivar county.

Hon. A. H. Longino, Chancellor.

Godfrey Frank *et al.*, the appellants, were complainants in the court below; Mary Covington *et al.*, appellees, were defendants there. The facts are stated in the opinion of the court.

*McWillie & Thompson,* for appellants.

It is impossible to conceive that the legislature intended that § 1740 of the present code, and the similar provisions in the earlier codes, should apply to a case like the one in hand, and in all deference to the contrary views of opposing counsel, we confidently submit that no like case can be found where they have been applied by this court. We concede that there are loose expressions in some of the reported cases that give countenance to the contention of the appellees, but we challenge the production of any case the facts of which presented the question for adjudication. The object of the statute was to preserve the estate of a decedent for the benefit of heirs, devisees and legatees, and not to cut off evidence as to who were the persons having such relation to the estate, and we cannot find that it has ever been applied where the interest asserted by the person offering to testify had not vested, according to his testimony, in the lifetime of the decedent, whether the latter's death took place before the right of action accrued or not. In every case relied upon by opposing counsel the interest vested in the lifetime of the decedent, and the claim was one that could have been asserted against the decedent had he lived long enough. And this is agreeable to the statute, which, since 1871, has been limited

to claims that originated in his lifetime. Code 1871; § 758; code 1880, § 1602; code 1892, § 1740. Before the adoption of the code of 1871, providing this limitation, the statute had already, under the code of 1857, which did not by direct terms so limit its application, been held to relate only to causes of action that arose while the decedent was yet alive. *Witherspoon* v. *Blewett,* 47 Miss., 570. By the terms of the statute the exception as to claims against estates of deceased persons had no reference to claims which did not originate during the life of the owner of the estate.' *Nemo est haeres viventis.* As Saint Paul said in respect to wills, "Where there is a testament there must also of necessity be the death of the testator," so ,there can be no status as widow or heir until the husband and ancestor has first paid his debt to nature. In the case at bar there was no restraint during his lifetime upon Covington's absolute dominion and right to dispose of the estate, unless we accept Mary's mere veto power as to the quarter section constituting his homestead, and to do that we must presuppose her to have been his wife, while even that exception does not apply to the daughter, whose testimony was also excluded. He could have alienated the property and squandered the proceeds or given them away to others.

The right of the widow and heir is limited to what the husband and ancestor owned at the time of his death, and continued ownership until his decease, as well as that event, is essential to a devolution of estate by operation of the law of descent. It is no answer to say that the appellants are under the necessity of proving their status by events that transpired in Covington's lifetime. The question is, when did the claim propounded, a claim by inheritence, arise, or "originate," as the statute has it? When does the credit sale of a bale of cotton originate so as to entitle the seller to claim its proceeds and the buyer to have the bale? Is it when the buyer is establishing the credit that induces the contract and the seller is making his crop? Surely not. While it is true that without the establishment of

the credit and the making of the crop the sale could not have occurred, the respective claims originated when the new rights of the parties rose by reason of the sale. So, in the case at bar, . . the claim of the appellants did not originate previous to the death of Covington by reason of anything that happened during that time, for while they would have had no claim but for what did then occur, their claim arose in consequence of his death and ownership of his property at the time of his death. . Neither was dower under our early law, nor is the existing provision for the widow in lieu of it, a matter of contract, for while consequences of marriage, coupled with other incidents, they attach by operation of law. The wife's interest is not a vested one, but has always been subject to statutory regulations, and it might be wholly taken away should the legislature deem it proper to do so. It arises by operation of law, and in consequence of the death of the husband coupled with his continued ownership of the land to the date of his death. *Magee* v. *Young,* 40 Miss., 171; 10 Am. & Eng. Enc. L., 142 and 145. Were Covington still living there would be no inheritance. Had he died without property, there would likewise have been no inheritance, no matter how fully might be established the status of the appellants as his widow and heirs.

The words "in the course of administering the estate," following the exception in favor of claims that "originated after the death" of the deceased, do not weaken the emphasis of our contention, when we give to the word "administration" the same broad interpretation given to the words "claim" and "estate of a deceased person." The word so taken covers the legal disposition of an estate, whether or not there be in point of fact any administrator or technical administration. The provision of the code of 1857 did not contain the words "in the course of the administration," and yet it was applied to all cases involving dealings with or acts done by the administrator. *Witherspoon* v. *Blewett,* supra. The addition of the words in the subsequent codes must therefore be accepted as somewhat extend-

ing the exception in favor of persons offering to testify. Certainly in the case that we now proceed to cite as a complete adjudication of this question, the claim of a right which vested on the death of a decedent was treated as one to which the statute was not applicable.

In the case of *Tucker* v. *Whitehead,* 59 Miss., 594, it was held that the proponent of a will on the trial of an issue *devisavit vel non* could testify in support of the will although he was the principal legatee.

In that case, § 758, code of 1871, the prototype of § 1740 of the present code, was relied upon by the counsel for the appellant, and many of the authorities now pressed upon the court were cited as conclusive of the question. The counsel for the appellee took the position that as a will is ambulatory until the death of the testator, "a man can no more be said to have a devisee during life than he can have an heir," and cited two cases arising under statutes somewhat similar to ours, one a Massachusetts case, which held that causes of action arising under a will had no existence until the death of the testator, and the other a Missouri case, which quoted the Massachusetts case with approval, and declared that the real question was whether or not there was a will, which declaration was presumably occasioned by the natural conclusion that to exclude the testimony was to prejudge the very question at issue in favor of the existence of the will.

In its opinion this court held that the witnesses were competent, and cited the Massachusetts and Missouri cases, as well as *Kelly* v. *Miller,* 39 Miss., 1, in which last case the executor of the will, who was the principal legatee and devisee under the will, was permitted to testify in support of the will as to acts of the testator during life. It is wholly immaterial whether the title vests under a will or by inheritance. Until it does vest, he who might subsequently become the heir, legatee or devisee would have neither a cause nor a right of action. This court has only very recently repudiated all distinction between

the title acquired under a will and that acquired by inheritance in a case involving the application of the statute of limitations to joint causes of action. *Stauffer* v. *Mortgage Company, ante,* 127. The question is not by what route the cause of action came, but when it arrived or vested. We think we can leave this subject in the utmost confidence that it will never be held that an inheritance can antedate the death of the owner of the estate.

In this proceeding there are two very different cases involved. In one of them the foreclosure of a mortgage is sought; in the other is to be tried the question of title to the property incumbered by the mortgage, all steps towards a foreclosure being by agreement suspended until the court shall have decided between those who claim to have inherited the estate. There is then a claim against the estate existing in the form of a debt secured by mortgage, and there are two adverse claims to the estate, the parties propounding which assert title by way of inheritance from the same decedent. The question is not merely whether the property belongs to the estate, as in *Rushing* v. *Rushing,* 52 Miss., 329, where the claim was made against the representative of the estate, but involves the ascertainment of who is the heir of the decedent. This is now the whole issue before the court, and it was upon this issue that the testimony in question was excluded.

A recognition of this makes it apparent that it cannot be said who represents the estate until the determination of the issue, and in the meantime it cannot be said that either Dickey, the resurrected kinsman, or the appellants represent the estate. To hold otherwise would prejudge the question at issue. Where both parties claim by inheritance, neither is asserting a claim against the estate that would result in its increase or diminution in the hands of the representative. The estate would remain the same size and value after the decision as before, and the succession alone would have been determined.

The court will notice that in none of the cases relied on by

opposing counsel has this question been decided. In *Lamar* v. *Williams,* 39 Miss., 342, the action was trespass by an administrator for injuries to a slave of the decedent in his lifetime. In *Jacks* v. *Bridewell,* 51 Miss., 881, the proceeding was in equity by one having no claim as representative to foreclose a lost mortgage on the lands of the estate given by way of indemnity, the mortgagee offering himself as a witness to prove the loss and contents of the mortgage, and that his right to be indemnified had accrued. In *Rothschild* v. *Hatch,* 54 Miss., 554, the only question arising under this statute was whether B. L. Hatch and A. L. Hatch were competent witnesses, the action being ejectment against the grantee of the heirs of Richard Griffith, who died in possession. The court held as to B. L. Hatch that he was a competent witness because he was not a party to the suit and had no interest in the result of it, and that A. L. Hatch, who was one of the plaintiffs, was incompetent because he was offering to prove, against Griffith's estate and by admissions made during his life, that he had only a permissive possession in subordination to the right of Hatch as the heir at law of Griffith's first wife, who had died without issue at a period so remote as to bar all claim.

*Jacks* v. *Bridewell* rests on *Lamar* v. *Williams,* and *Rothschilds* v. *Hatch* rests on *Jacks* v. *Bridewell,* and in these cases, which represent the whole law relied upon by the appellees, there is nothing whatever to control the question now in hand. And it is significant that while far more than enough was said in the uncalled-for definitions given the terms "claim" and "estate," not a single word was given to the important preposition "against" and to limit the class of claims referred to as those which might result in the diminution or increase of the estate according to the position of the parties in the controversy.

In Alabama it has been expressly held that the statute is not applicable unless the effect of the evidence is to diminish or enlarge the rights of the decedent's estate. *Hill* v. *Helton,* 80 Ala., 528.

As held in some of the cases bearing on this subject, the contest must be between the living and the dead, or, for exactness of expression, between the living and one whose right to represent the dead is unquestionable.

In *Horne* v. *Nugent,* 74 Miss., 102, it was held that Horne, who claimed, under an earlier conveyance from one Saffold, deceased, than the one relied upon by Nugent, was a competent witness as to matters that transpired in the lifetime of Saffold, because, in the absence of all warranty by Saffold, his estate would remain unaffected, the contest being between living parties both of whom claimed under the decedent by deed. Is the case different when the living parties claim by inheritance? Surely not.

*Butt & Butt,* on the same side.

The objection made by appellants to the deposition of Mary Covington and Cornelia Miller is rather a two-edged sword. Their objection can only stand upon the ground that Mary was the lawful wife of W. A. Covington and Cornelia his lawful child; both were and are competent witnesses and not within the prohibition of the statute.

Appellants are not seeking to establish "a claim or debt" against the estate of W. A. Covington which may be satisfied by the payment of so many dollars, and it is not a valid objection that the testimony of the witness will remotely and collaterally contribute to create a liability that may or may not be vindicated in some other proceeding. The relation of married persons to each other is not a mere personal relation depending on their will, but a status, a legal condition, established by law, which the state has full power to create, change or abrogate. The relation is not a contract and is not a vested right, therefore it does not fall within the prohibition against the impairment of the obligations of contracts, or divesting of vested rights; thus it is that the state can at any time dissolve the marriage of any persons over whose domestic condition it has

jurisdiction. The state controls the local government of each state; the United States, or general government, has no jurisdiction over the domestic conditions of the inhabitants of the several states. 5 Am. & Eng. Enc. L., 746; *Carson* v. *Carson,* 40 Miss., 349.

Hence it is that in no sense whatever do the depositions of Mary Covington and Cornelia Miller come within our statute, § 1740, code 1892. *Griffin* v. *Lovering,* 37 Miss., 458; *Lamar* v. *Williams,* 39 Miss., 342; *Toler* v. *Jordan,* 44 Miss., 282; *Love* v. *Stone,* 56 Miss., 449; *McCutchen* v. *Rice,* 56 Miss., 455; *Fewell* v. *McGowan,* 58 Miss., 261; *Combs* v. *Black,* 62 Miss., 831; *Cole* v. *Gardner,* 67 Miss., 670; *Gordon* v. *McEachin,* 57 Miss., 834.

*Chas. Scott* and *E. H. Woods* and *A. Y. Scott,* for appellee Dickey, and *E. H. Moore,* for appellees other than Dickey.

The court below did not err in excluding the depositions of Mary Covington and her daughter Cornelia. They were interested witnesses, and could not testify to establish their own claims against the estate of W. A. Covington, deceased. Code 1892, § 1740; *Lamar* v. *Williams,* 39 Miss., 342; *Love* v. *Stone,* 56 Miss., 449; *Jacks* v. *Bridewell,* 51 Miss., 881; *Rothschild* v. *Hatch,* 54 Miss., 554.

*Frank Johnston,* on same side.

It will be seen that the appellants, including Mary Covington, are in this suit, on a direct issue made by the pleadings, setting up their claims of title to the entire estate.

The reputed widow presented herself as a witness in this case to establish her title to this estate by proving a marriage with the decedent, the fact of marriage being the only fact necessary to sustain her claim of title to the property in controversy.

The term "claim against the estate" is not limited to money demands "against and adversely to an estate," but the term "es-

tate" is used in its broad and popular sense to include the property of every kind which a person leaves at his death. It includes a claim of title to any part of the estate. *Jacks* v. *Bridewell,* 51 Miss., 881; *Green* v. *Mizelle,* 54 Miss., 220; *Rothschild* v. *Hatch,* 54 Miss., 554; *Jackson* v. *Smith,* 68 Miss., 53.

It was held that devisees of an original owner of land were incompetent witnesses to establish their claims to the land conveyed by the decedent in his lifetime. *Neblett* v. *Neblett,* 70 Miss., 572.

In *Jacks* v. *Bridewell,* 51 Miss., 881, the controversy was in respect to the title to land which belonged to a decedent.

In *Green* v. *Mizelle,* 54 Miss., 220, the title to land was in controversy, and the court affirmed and adhered to the decision in *Jacks* v. *Bridewell,* supra.

. *Rothschild* v. *Hatch,* 54 Miss., 554, was an ejectment suit involving title to land, and the plaintiff was not allowed to testify as to the admission of the decedent that he was holding possession for the plaintiff.

In *Jackson* v. *Smith,* 68 Miss., 53, the controversy was in respect to the title to a mule which was part of the decedent's estate, and it was said by the court that "the test of the competency in this class of cases is, whether the estate of a deceased person is the subject-matter of the litigation in which the party is offered as a witness."

A person cannot be a witness to discharge himself from a claim set up against himself in behalf of a deceased person's estate. *Clay* v. *Morgan,* 38 Miss., 348.

In *Lamar* v. *Williams.* 39 Miss., 342, an action by the plaintiff's intestate to recover damages against Lamar and Kersh, defendants, for injuries done to a slave belonging to the intestate, the defendants were offered as witnesses to prove a license from the plaintiff's intestate to whip the slave. It was held by the court that they were incompetent.

The purpose of the statute would be utterly defeated by

permitting the testimony of a reputed widow to show a marriage the existence of which forms the whole controversy and upon proof of which the title of the decedent's estate would immediately vest in her.

An unscrupulous woman could readily fabricate a story of an informal marriage with a decedent in such a manner as to render direct contradiction impossible. Such a case can readily be imagined.

I respectfully submit that the case supposed is one of the strongest illustrations possible of the danger of permitting such testimony against the estate of a deceased person.

It has been repeatedly held that a widow is not a competent witness to establish a trust in any of the estate of her deceased husband.

In *Buie* v. *Buie,* 67 Miss., 456, a widow was not allowed to testify that her deceased husband had made her a gift of the promissory note of a third person, the ownership of which was in controversy.

In those cases the claim was to a small part of the property of the decedent, while here the testimony of the alleged widow would take the entire estate from the heir and next of kin of the decedent.

Every possible reason that would render the widow incompetent to establish her claim to one of the assets of the estate applies with greater force where her testimony would be to establish her claim of title to the entire estate.

The case of *Carpenter* v. *Ware,* 4 Colo., 458, is directly in point. The statute of Colorado excludes all persons as witnesses to establish their claim to an estate, where the adverse party defends as heir. The court held that a person claiming to be the widow of the decedent was incompetent as a witness to testify to facts tending to prove a marriage with the decedent. *Carpenter* v. *Ware;* 4 Colo., 458-461.

In the case of *Carpenter* v. *Ware,* supra, the testimony of the reputed widow in support of the marriage was treated and

considered as establishing her claim to the estate. The whole question was whether proving the marriage was establishing a claim against the estate. *Mueller* v. *Rebham,* 94 Ill., 142; *Lawrence* v. *Lawrence,* 164 Ill., 367; *Dennison* v. *Dennison,* 35 Md., 361; *Redgrave* v. *Redgrave,* 33 Md., 93; 1 Bish. on Law of Married Women, sec. 23; 1 Blackstone's Com., 433; Story's Con. Law, sec. 108.

Argued orally by *T. A. McWillie* and *Jno. T. Butt,* for appellant, and by *Frank Johnston, Chas. Scott,* and *E. H. Moore,* for appellees.

TERRAL, J., delivered the opinion of the court.

Godfrey Frank and others filed their bill in the chancery court of Bolivar county against the unknown heirs of W. A. Covington, deceased, to collect certain notes executed by said decedent for large sums of money, and to foreclose a mortgage executed by Covington alone upon a large real and personal property, for the security of said notes.

Mary Covington and Cornelia Covington, claiming to be the widow and daughter of Covington, made themselves parties to the bill and interposed as a defense thereto that the claim was excessive, and that a portion of the real estate sought to be subjected to the claim was not liable, because it was the homestead of the decedent and of his family, and the mortgage was not signed by his wife, the said Mary Covington.

The depositions of Mary Covington and of Cornelia Miller was offered by them to prove their relationship of widow and child of Covington, and hence their title to his estate by descent, and these depositions were excluded by the court.

Section 1738, annotated code, provides: "Every person, whether a party to the suit or not, shall be competent to give evidence in any suit at law or in equity, and shall not be incompetent by reason of any interest in the result thereof, or in the record, as an instrument of evidence in other suits." And § 1740 provides that: "A person shall not testify as a witness to es-

tablish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person." And upon the construction of these clauses the competency of said witnesses must be determined.

Sec. 1738 removes a disability of persons which existed at or by the common law, and thus bestows a right or benefit upon all persons, and § 1740 excepts from that right or benefit the persons therein named; and it is a rule in the construction of statutes that exceptions must be strictly construed. Endlich on Const. Stats., sec. 340; Black on Interpretation of Laws, 275, 282. And where strict construction is to be resorted to, the person or thing excepted must come within both the letter and the spirit of the act. Now, the exception in § 1740 is that of a person to establish his own claim, etc., which originated in the lifetime of the deceased. If to prove the status of Mary Covington and Cornelia Miller as to W. A. Covington be proof of a claim against the estate of W. A. Covington, certainly it is a claim that did not originate in the lifetime of W. A. Covington. It is undoubted law that a child, during the lifetime of the father, has no interest in his estate; it was held in the *New Orleans Railway & Mill Supply Co.* v. *Gatti and wife,* at this term, that a wife has no property interest in the homestead of the husband such as would constitute a consideration to support a promise from him to her. So neither wife nor child has any interest in the property of the husband and father during his lifetime; dying intestate they would be his heirs, and to prove their relationship to him is to prove their title to his property by descent when cast; but it is not to prove a claim that originated in his lifetime. At the death of a person, dying intestate, *eo instanti* the title of the heirs accrues. *Jones* v. *Robinson,* 17 Ohio St., 171, 180; 1 Redfield on Wills, 412, 413.

It is too plain for argument that the title of Mary Covington and Cornelia Miller, as his heirs, to the estate of W. A. Covington did not accrue in his lifetime, and only a claim arising in his lifetime excludes them from testifying.

In *Tucker* v. *Whitehead*, 59 Miss., 594, and in *Kelly* v. *Miller*, 39 Miss., 17, it is held that a person claiming title or right under a will may testify to establish the will by which their title to the estate of the testator is established; a like construction authorizes a person to establish his title to the intestate's property by his own oath. They are parallel cases in every respect. If § 1740 did not exclude Mary Whitehead from testifying in *Tucker* v. *Whitehead*, or Miller from testifying in *Kelly* v. *Miller*, it ought not to exclude Mary Covington and Cornelia Miller from testifying in this case. The title of Mary Whitehead accrued upon the death of Tucker, as the title of Mary Covington accrued at the death of Covington. In neither case did the title originate in the lifetime of the testator or of the intestate, and both are competent witnesses.

It is held in some cases that where a marriage relation is directly in issue, one of the parties cannot testify thereto, the other party being dead; but where such relation comes indirectly in issue, such relation may be proved by one of the parties, though the other is deceased. Jones on Evidence, sec. 793; *Green* v. *Green*, 126 Mo., 17. This authority directly supports our decision. For the direct question in this case is, what is the amount of the debt due these executors; what part, if any, of this estate can be preserved from the claim of this creditor? The claim directly in issue here is the claim of these executors; the right of Mary Covington and Cornelia Miller is only indirectly concerned.

*We are of the opinion that the depositions of Mary Covington and Cornelia Miller should have been received and considered by the chancellor, and for the error in excluding them, the decree is reversed, and the case is remanded for a new hearing.*