'ANNA D. JAMISON *v.* ROBERT S. JAMISON ET AL.

[46 South., 83, 945.]

ON THE MOTION.

1. CHANCERY COURT. *Practice. Bills of exceptions. Time for filing. Extension in vacation. Code* 1906, §§ 606, 797.

   Code 1906, § 606, making applicable to chancery courts all statutory regulations applicable to bills of exceptions in circuit courts, embraces § 797, authorizing circuit judges to extend in vacation the time for filing a bill of exceptions from sixty to ninety days when the evidence and proceedings were noted down by a stenographer, and a chancellor may, therefore, grant such extension in a like case.

2. SAME. *Unofficial stenographer. Code* 1892, §§ 555, 736. *Laws* 1908, *p.* 136.

   Code 1892, §§ 555, 736, and Code 1906, §§ 606, 797, must be construed as contemplating unofficial stenographers, since there was no pro-

Opinion of the court.

vision of law for official stenographers in chancery courts when either of the Codes were adopted.

### ON THE MERITS.

**3. WILLS.** *Contest. Undue influence. Evidence. Order of introduction.*

Where in a contest as to the validity of a will, the executors had offered the will proving its execution and testator's testamentary capacity, and contestants had offered testimony tending to show that the will was the result of undue influence and had rested their case, it was error to exclude the testimony of the testator's widow in contradiction thereof, that there had been no undue influence by her or other beneficiaries.

FROM the chancery court of, first district, Chickasaw county. HON. JOHN Q. ROBINS, Chancellor.

Robert S. Jamison and others, appellees, were complainants and Anna D. Jamison, appellant, defendant in the court below.

The opinion rendered by the court in overruling the motion to strike out the bill of exceptions states all the facts material to that part of the controversy.

A statement of the facts involved on the merits follows the opinion on the motion.

*R. H. Knox,* and *R. V. Fletcher,* for the motion; *N. W. Bradford* and *May, Flowers & Whitfield, contra.*

WHITFIELD, C. J., delivered the opinion of the court on the motion.

The ground of the motion is this: "Because it appears from the record that the bill of exceptions in this case was not signed or approved by the chancellor who tried the case within sixty days of the date of the rendition of the decree appealed from, or of the date of the overruling of the motion for a new trial, or of the end of the term of the court at which the said cause was heard." The ground of the motion is that the chancellor had no authority to extend the time, as he did, to ninety days. It is conceded that the stenographer's notes were prepared and filed within the ninety days.

Ann. Code 1892, § 555 (the same as Code 1906, § 606), except in its reference at the end of the section, provides as follows:

"Sec. 555. *Bills of Exceptions.*—Either party may tender a bill of exceptions in a chancery court whenever it may be necessary to make any matter a part of the record in the cause and the chancellor shall sign the same; and all the provisions of law applicable to obtaining bills of exceptions in the circuit court shall apply to a chancery court. See §§ 733–737." The reference appended to Code 1906, § 606, is "(See Sec. 794–799)." Manifestly Ann. Code 1892, § 555, embraced section 736 of that Code, and Code 1906, § 606, embraced Code 1906, § 797. The reference means that, plainly, in the two sections. The language in both sections, that "all the provisions of law applicable to obtaining bills of exceptions in the circuit court shall apply to a chancery court," means, manifestly, that the chancellor shall have the same power precisely that the circuit judge has in respect to his dealing with bills of exceptions and stenographer's notes. Any other interpretation destroys the spirit of the two sections, which were intended broadly and liberally to analogize in all respects the practice of the two courts on the subject.

It is not material at all that the stenographer in a chancery court, prior to the law allowing official stenographers therein, was an unofficial stenographer. That consideration is entirely beside the mark. Indeed, the matter has been settled heretofore in the case of *Roach* v. *Tallahatchie County,* 78 Miss., 303, 29 South., 93, in an opinion by Mr. Justice CALHOON. The legislature enacted these two statutes, with these references appended to them, with full knowledge of the fact that the chancery courts, when these were first enacted, had no official stenographer, and, of course, could only have had in mind, so far as the chancery courts were concerned, unofficial stenographers —those employed by agreement of the parties.

The motion is *denied.*

### ON THE MERITS.

The appeal in this case was from a decree of the chancery court on an issue of *devisavit vel non*, tried before a jury. A. J. Jamison died leaving a last will and testament, by the terms of which he left the bulk of his property to his surviving wife and their two children, giving his children by a former marriage, nominal bequests. The executors offered the will for probate, and R. S. Jamison and others, children of the first wife, attacked the will on the ground that the testator was not of testamentary capacity at the time he made the will, and, that he was unduly influenced by his wife. The proponents offered the will, proving its execution and the testamentary capacity of the testator. The contestants then offered testimony tending to show that the will was the result of undue influence improperly exercised by proponents. When contestants had rested their case, proponents introduced as a witness Mrs. Jamison, the widow of the testator, and undertook to prove by her that there was no undue influence exercised by herself or other beneficiaries. Contestants objected to her testimony, and the objection was sustained, on the ground that it was not in rebuttal and should have been brought out by proponents on the examination in chief.

*May, Flowers & Whitfield,* for appellant.

After the contestants had rested their case, Mrs. Anna D. Jamison was introduced, and every question put to her was objected to and the objection sustained by the court. After several objections had been made and sustained, counsel for proponents said "I offer evidence for the purpose of contradicting certain specific acts and statements testified to have been made by her, by witness, introduced by contestants." The evidence offered was objected to and the court sustained the objection. It will be noted that the record shows no exception to the action of the court but it appears that the court sug-

gested "that exception may be considered made to any ruling of the court on objection to questions or to other rulings of the court on testimony," in order to save time. So the question is squarely presented on this issue.

A great many cases in which wills are contested take the course which was followed in this case up to the time the court refused to permit Mrs. Jamison to testify: the proponents offer the probated will, if it has been admitted to probate, or, if it has not yet been probated, the same proof that would be required if offered for probate without contest; then the contestants offer what evidence they have of mental incapacity or restraint; and then the proponents offer in rebuttal what testimony they have to meet the showing made by the contestants.

In *Runyan* v. *Price* (Ohio), 86 Am. Dec., 459, there was a situation identical with the one in the case at bar, except that a probated will was offered in the former case. The proponents were allowed to offer testimony in rebuttal and the supreme court said it was proper and further (p. 461):

"There are no pleadings to which the evidence must be confined, and with the allegations of which it must correspond. 'There are strictly no parties; both sides are actors in obedience to the order directing the issue.' In all cases alike the will may be assailed upon any and all the grounds that would expose its invalidity. But what particular objections may be supposed to be available, and be offered in evidence in any given case, can only be known as it may be developed in the testimony offered by those opposing the will. They may relate solely to frauds and undue influence, supposed to have been practiced upon the testator, or to his supposed want of mental capacity, or the absence of due execution on his part, or of the due attestation. To require those affirming the will either to finally rest their case on the order of probate, or otherwise, in anticipation of attack that may or may not in fact be made, to introduce all the evidence they may have sustaining the will, on every ground on which it may be competent for the adverse parties to attack

it, would not, in our opinion, promote either the convenience of those charged with the trial or the justice of the case, but would tend to contrary results."

The same situation arose in the case of *Sheehan* v. *Kearney*, 82 Miss., 688, 21 South., 41, 35 L. R. A., 102. The court said (82 Miss., 702) :

"In the course of the trial the proponents offered the record of the probate of the will, and the will, and rested. The contestants then introduced their testimony as to testamentary capacity and undue influence and rested. The proponents then introduced testimony as to these two matters in rebuttal. Contestants objected to this testimony as not in rebuttal, insisting that all the testimony proponents had on these points should have been offered in chief. The court correctly overruled this objection. That the course pursued in the conduct of this trial was correct is expressly decided in *Runyan* v. *Price*, 86 Am. Dec., 459, and *In re Lehman's Will*, 40 Minn., 371, 42 N. W., 286."

In determining the order in which the evidence shall be offered, it should make no difference whether there has been a probate of the will or not. The probate makes the character of the proof different, but does not create a reason for a different order of introduction. The will itself and a showing that it has been probated, under our statute, are sufficient to meet the burden resting upon the proponents in the beginning; and if there has been no probate, then such evidence as would, unchallenged, entitle the will to probate, is sufficient to establish it *prima facie*. If the instrument has been probated, the evidence of its validity has been heard once and a sort of adjudication had, which adjudication is sufficient as far as it goes. In the absence of such *quasi* adjudication, the proof upon which the instrument might have been probated must itself be offered.

The burden of proving undue influence rests, not upon the party charging it, but upon the proponents of the will. This question was foreclosed in this state by the case of *Sheehan* v.

*Kearney, supra*, in which the court said the testator must be shown to have both possessed and freely used his testamentary capacity; that (82 Miss., 700) "Both are essential parts of the proponent's case." And (Ib., 702): "the burden of an issue *devisavit vel non*, is, both as to testamentary capacity and undue influence—or, better, that the testator was a free agent—on the proponents throughout." This case is cited under § 2693 (Vol. 3) of Elliott on Evidence as authority for the opposite rule declared by that author to be supported by the overwhelming weight of authority. It is also cited under § 405 of Page on Wills as supporting the propositions: "Upon the issue of undue influence the burden of proof, as established by the weight of authority, is upon the party alleging it; that is, upon the contestant. In this sense the burden of proof is the duty of establishing the issue by a preponderance of the evidence." The said case is also cited under § 2502 of Wigmore on Evidence as illustrating both views.

It appears that there is considerable difference among the authorities as to whether, technically speaking, the burden is upon the proponent of the will or upon the party charging that it is a product of undue influence. It really makes little difference, however, in the trial of the issue whether one view or the other should be followed. The result must of necessity be the same. Our court has established the rule that the proponent must assume the burden; but this burden has been made easy to meet by the adoption of the other rule that capacity to make the will and freedom from restraint in the execution of it will be presumed from proof that it was regularly executed and the introduction of the will itself. Our court bases its reasoning upon the statute which gives validity to wills executed with the proper solemnities by a person "of sound and disposing mind." One claiming under a will assumes the burden of showing that the alleged testator belonged to the class of persons authorized by the statute to make a will. He can meet this burden by introducing the will itself and proof that it was regularly executed. "But the burden in both respects is satisfied by the in-

troduction of the will and the record of the probated will, and
the contestants must then offer proof to overcome the *prima
facie* case thus made in both respects." And again (82 Miss.,
701): "On the contrary, capacity proved, the legal presumption
is that he was a free agent—that the alleged will was his free
and voluntary act. And this presumption satisfies the burden of
proof as to undue influence, and the contestant is thus put to his
proof." This last quotation is a criticism made by this court of
the opinion in *Baldwin* v. *Parker,* 96 Am. Dec., 704, but we
understand that it correctly expresses the view of this court. See
also Hinkley's Testamentary Law, § 50.

The proponents in the case at bar disposed of the burden rest-
ing upon them to show capacity and freedom from undue influ-
ence. They introduced the two subscribing witnesses who were
intimate friends of the deceased. By these witnesses it was
proved that the will was in the handwriting of the deceased
and that he brought it to them and requested them to sign it as
subscribing witnesses. The witnesses say that the entire instru-
ment is in his handwriting; that when he brought it to them
they were together and that J. F. Hall was also present;
that he asked them to sign it, stating to them at the time that it
was his will. These witnesses and others say that he was a man
of sound business judgment and able to attend to his own busi-
ness, to the business of his postoffice and to the business of the
bank. They also say that he frequently mentioned to them be-
fore and after the date of the execution of the will the fact of his
desire being that his wife and younger children should have his
property at his death. This certainly established the will *prima
facie* and put the contestants to their proof.

The contestants then offered their evidence of the particular
incidents above mentioned and rested. They offered no evi-
dence whatever of any knowledge on the part of Mrs. Jamison
or of either of the children that the deceased expected to write a
will or that he was writing it; nor that they requested him to
write it; nor that they ever expressed any preference as to how
it should be written; nor that anyone was present when it was

written; nor that any general influence which Mrs. Jamison possessed affected in the slightest the terms of the will. Then the proponents offered to introduce further testimony in rebuttal and the court refused to permit it.

*R. H. Knox* and *R. V. Fletcher,* for appellees.

With reference to the action of the court in sustaining objections to the testimony of Mrs. Jamison, it will be seen that the court's ruling was based upon the decision of our supreme court in the case of *Sheehan* v. *Kearney,* 82 Miss., 688, 21 South., 41. It that case it is held that the burden of proof is on the proponents of the will on an issue of *devistavit vel non,* both as to the testamentary capacity and undue influence but that a *prima facie* case is made by showing the due probate of the will. The opinion in this case elaborately discusses the point, reviews all the authorities and reaches the conclusion just stated. It being true in the instant case that the will had never been admitted to probate, it is perfectly manifest that our statute, which makes the probation of a will *prima facie* evidence of its validity, has no sort of application. The will never having been in fact probated, the burden of proof was upon the proponents as to both issues. It is clearly stated in the petition filed by the contestants that their case depends upon undue influence exerted by the surviving widow and her children and therefore under the ruling in the *Sheehan case,* it was the duty of the proponents to assume the affirmative of the issue and establish the fact that undue influence was not used. It is argued by appellant that it was impossible to do this for the reason that she could not anticipate the proof which would be offered by the contestants, and it would therefore be unreasonable to apply the rule in a case like this. It is perfectly clear, however, that since appellant had the burden of proof upon her they could have in their case in chief put the beneficiaries in the will upon the stand and denied the exercise of undue influence by them. This they did not do, and therefore the issue practically stood confessed by the proponents.

It is to be noted that the first question propounded to Mrs. Jamison was as to whether she had said anything or used her influence to induce the testator to make his will. This was a very general question and one which she could have answered just as well before the contestants put on their proof as she could afterwards. Clearly, since the burden of proof devolved upon the legatees under the will to establish the fact that no undue influence was used, it was the duty of the proponents to put this specific question in the development of the case in chief. It was not at all proper matter for rebuttal, in the ordinary sense in which that term is employed, and if the rule announced in the *Sheehan case* is to be followed, it is clear that the objection was well taken. It is said, however, that when by oral proof in open court the due execution of the will is shown, that this is equivalent to introduction of the probate of the will and that this satisfies the burden of proof. However, this is not in accord with the statute. The statute and the rule announced in the *Sheehan case* taken together make it clear that the true construction is that the burden of proof is upon the proponents, and that this burden is met either by positive proof that no undue influence was employed, or by the introduction of the probate of the will in the manner provided by statute. No other alternative is possible. The order of proof in a will case is not different from that which prevails in any other case except as expressly provided by statute and if the requirement of the statute is not met then the general rule must prevail which requires that all proof offered to sustain the issue must be offered in chief when the party offering the proof maintains the affirmative of the issue. That this is the correct view is supported by the thoroughly considered case of *Craig* v. *Southard,* 148 Ill., 37.

WHITFIELD, C. J., delivered the opinion of the court:

It was fatal error in the court below to refuse Mrs. Anna J. Jamison the right to testify. We notice no other assignment of error.

*Reveresd and remanded.*