## HELM *v.* SHEEKS ET AL.

[77 South. 820, In Banc.]

1. WILLS. *Execution. Secondary evidence. Probate.*
   When a will is presented for probate, secondary evidence cannot be used to establish its due execution, if any of the subscribing witnesses will and can prove the facts until they have been called or produced.

2. WILLS. *Execution. Secondary evidence.*
   Where a subscribing witness to a will was not within the state and an effort was made to take his deposition which was unavailing and counsel for the proponent of the will was led to believe that the witness would be at the trial, and that he would be a hostile witness. In such case it was competent to produce other witnesses bearing on the execution of the will, the sanity of the testatrix, and the question of undue influence.

3. WITNESSES. *Will. Contest. Testimony of interested party.*
   The testimony of a party cannot be received to establish or to destroy a will where the party testifying would become the recipient of the property of the decedent or some portion thereof.

4. WILLS. *Trial. Questions for jury.*
   Under the facts as set out in its opinion in this case involving the validity of a will, the court held that the issues of execution, sanity of testatrix, and undue influence, should have been submitted to the jury.

APPEAL from the chancery court of Noxubee county.

HON. ALBERT Y. WOODWARD, Chancellor.

Proceeding by Mrs. M. T. Helm to probate a will. Mrs. W. B. Sheeks and others filed a *caveat*.. From a judgment for the latter, the former appeals.

The facts are fully stated in the opinion of the court.

*I. L. Dorroh, Strong & Bush* and *Walker & Wooten,* for appellant.

*A. T. Dena, Geo. Richardson, Green & Green* and *H. H. Brooks,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, Mrs. M. T. Helm, presented for probate a paper purporting to be the last will and testament of Miss Sarah Alice Brooks. The alleged will reads as follows:

"The State of Mississippi.

"I, Sarah Alice Brooks, do make & publish this to be my last will and testament—

"Item 1st. I give and bequeath to my sister Mary T. Helm my entire estate—real and personal which I may own at the time of my death.

"Item 2. I appoint her my sister Mary my executrix and relieve her from giving security on her bond as executrix. If I leave any debts unpaid they will be small & my sister is charged to pay them out of my estate & it will be unnecessary to file any inventory of my estate or to make any reports to the court.

"In testimony hereof I sign my name hereto on this the 23d day of February, 1897.

                                        "S. A. BROOKS.

"In our presence as witnesses:

      "T. O. BURRIS:

      "C. R. SMITH."

When the will was presented for probate there was an affidavit made by T. O. Burris, one of the subscribing witnesses, in which he interlined the usual affidavit with the following expression:

"To the best information and belief of this deponent of sound and disposing mind, memory and understanding and above the age of twenty-one years," etc.

A *caveat* was filed by the appellees against the probate of the will, and the clerk thereupon declined to probate the alleged will. The appellees then filed a bill in the chancery court, alleging that the instrument was not the last will and testament of Miss Brooks, and that she was insane or mentally incompetent to make a will; and also

that she was under the control and influence of Mrs. Helm, and that the alleged instrument in writing was obtained by undue influence. A motion was made to strike the bill from the files, which was overruled, and thereupon the appellant answered the bill, denying the material allegations of the bill.

On the trial of the cause T. O. Burris was produced as a witness for the proponent of the will but his recollection of the transaction had completely vanished, and he was unable to testify as to any of the material facts, except to say that he recognized his signature to the will as being genuine, and that he must have seen the party sign the instrument or he would not have signed it; that he never signed anything without knowing what he was signing. He was unable to recall any of the circumstances or any of the parties, and could not say from recollection whether the party S. A. Brooks who signed the will was a man or woman, or any other fact pertaining thereto.

C. R. Smith, the other subscribing witness, was not produced at the trial, the proponents claiming that he was a hostile witness, and that the contestants had made an affidavit for a continuance at a former term of court, and had secured a continuance because of the absence of C. R. Smith, who, it was alleged in the affidavit, was a material witness for the contestants, and in which it was stated that the contestants expected to prove by the said Smith that S. A. Brooks never executed said will, never signed the same in his presence, never published or declared the said instrument to be her last will, and did no act to indicate that the said will was the will of the said S. A. Brooks, and, further, that she was absolutely under the influence of Mrs. Helm, the proponent, at the time the instrument purported to be witnessed. Between the time the motion for a continuance was made and the same secured and the trial of the cause, the contestants propounded interrogatories to C. R. Smith, to be sent to the state of California, where Smith then was, or was

supposed to be. The interrogatories, however, were returned unanswered; Smith not being at the place to which they were sent. There was no effort on the part of the proponent of the will to secure the deposition of Smith, other than to cross the deposition above mentioned proposed to be taken by the contestants, nor was there any summons or effort to secure Smith's attendance at court until the day preceding the trial, when a subpœna was issued to Noxubee county for Smith and returned "not found." The attorneys for the proponent say, however, that they had a conversation with one of the attorneys for the contestants two or three days before the trial, in which they asked if Smith would be present, and claim that the said attorney informed them to be ready for trial; that Smith would be at the trial. They further testify that they received a report that Smith was in the county on Sunday preceding the trial, in company with one of the contestants, and that on Monday following they issued the subpœna and fully expected Smith to be present, and that they were expecting him to be produced or appear at the trial when they answered ready for trial. It appears that Smith had been confined at the insane asylum at Meridian, and that after he was released from said insane asylum, or some thirty days thereafter, he went to California in search of health. It appears that his permanent residence was in Lowndes county, but it does not appear that he had been at his residence since going to the state of California, and it does not appear that he had returned to the state of Mississippi after going to the state of California.

In the absence of Mr. Smith, and without a formal summons having been issued for him other than as above stated, the complainants produced Hon. J. A. Orr, an attorney of Columbus, Miss., who drafted the instrument purporting to be the will, who testified that he had known Sarah A. Brooks for a long time, and was intimately acquainted with her family; that he pre-

pared the will at her request, out of the presence of
Mrs. Helm, who came with Miss Brooks to his office, and
that he procured Burris and Smith to sign the will as
witnesses after it had been prepared; and that the will
was signed by them in the presence of Miss Brooks and
himself. He further testifies that he saw nothing to in-
dicate unsoundness of mind on the part of Miss Brooks;
that he regarded her as competent to make a will at
the time; and that there was nothing to indicate to his
mind that any undue influence was exerted by Mrs.
Helm.

The proponents also introduced Z. T. Dorroh, who
had formerly been sheriff and chancery clerk of Noxubee
county, and lived in Macon, Miss., for a long number of
years as a near neighbor of Mrs. Helm, with whom
Miss Brooks lived during the latter part of her life
until she was sent to the insane asylum in 1911. He
testifies that Miss Brooks came to him shortly before
the alleged will was written, and requested him to write
her will, but that he declined to do so, and suggested
that she get a lawyer to prepare the will; that she
asked him if Mr. Orr would do, and that he stated to
her that Mr. Orr was a suitable person to write her
will; that shortly after the will was prepared she
brought same to him, and stated that Mr. Orr had writ-
ten her will, and requested him to keep the will in his
safe or possession, which he had done. He testifies
that at that time Miss Brooks was of sufficient mental
capacity to make a will.

W. B. Helm, a son of the proponent of the will, was
also introduced and testified that he had known Miss
Brooks, who was his aunt, practically all his life, he
being at the time about forty-five years of age, and
that he had attended the same school with Miss Brooks
when he was a small boy, and testified that the signa-
ture to the alleged will was the signature of Miss
Brooks.

The proponent, Mrs. Helm, tendered herself as a witness to establish the will and to testify to all necessary elements involved in the contest. The chancellor excluded her evidence on the theory that she was incompetent to establish the will, as to do so would be to establish her claim against the estate of said Sarah A. Brooks.

The contestants were related to the deceased as nephews, nieces, great nieces and nephews, being the decendants of H. H. Brooks, Sr., a brother of deceased.

At the conclusion of proponent's testimony the chancellor sustained a motion to strike out the evidence, and granted a peremptory instruction for the contestants, and this appeal is from the final judgment accordingly entered.

The following propositions are presented for decision in this case: (1) Was it necessary for the proponents of the will to produce C. R. Smith, or make a satisfactory showing for not producing him? (2) Was Mrs. Helm a competent witness to establish the will? (3) Was there sufficient evidence to justify the submission of the case to the jury on the issues involved?

The statute requires two witnesses to witness the execution of a valid will, and the purpose of the statute in requiring witnesses is not only to establish the writing or signing of the instrument, but to have witnesses whose business it is to determine the capacity of the testator making a will. In our opinion, it was the duty of the proponent to produce Smith if he was in the jurisdiction of the court, or to take his deposition if that could be done, as the subscribing witness Burris wholly failed to recall any of the facts and circumstances attending the execution of the will, and could not recall whether it was a man or a woman making the will. The testimony of the subscribing witnesses is the best evidence, and their testimony has been selected by the decedent to prove the essentials of the execution of the

will. If the subscribing witness cannot be produced, or, if produced, will not testify to the execution of the will, or are not able to recall the facts, then other evidence may be offered, but secondary evidence cannot be used if any of the subscribing witnesses will and can prove the facts until they have been called or produced.

The statute requires at least one witness to prove the execution of the will. Taking this record, however, and all that appears therein, it warrants the belief and finding that Smith was not at the time within the jurisdiction of the court. When last heard from, so far as the record shows, he was in California, and it does not appear that he had returned to Mississippi, and it does appear that an effort was made to take his deposition, but which was unavailing. It further appears that counsel for the proponent was led to believe that Smith would be at the trial, and that he would be a hostile witness. In this state of the record we think it was competent to produce other witnesses bearing on the execution of the will, the sanity of the testatrix, and the question of undue influence.

With reference to the exclusion of the testimony of Mrs. Helm, we think the chancellor was correct in so doing, under the doctrine of *Cooper* v. *Bell*, 114 Miss. 766, 75 So. 767, and *Whitehead* v. *Kirk*, 104 Miss. 776, 61 So. 737, 62 So. 432, 51 L. R. A. (N. S.) 187, Ann. Cas. 1916A, 1051. In the *Whitehead* v. *Kirk Case* the decisions of this court were reviewed at some length, and the proposition established that a person who would be the heir of the maker of a will in the event of his death without a will could not testify as to mental incapacity of a testator, the effect of which would be to destroy the will and establish her rights to his estate. It is urged here that the claim of Mrs. Helm would not become effective until the death of Miss Brooks, and therefore that the testimony was not to establish a claim

against the estate originating in the lifetime of the decedent. The claim or right to the estate does not become vested until death, but its foundation is the will, and the will, of course, must be made during the lifetime of the testator. To establish a will is to establish an instrument made in the lifetime of a person by which the estate of such person will be vested at his death. The claim flowing from the will necessarily originates with the will. It is true it may be destroyed and rendered ineffectual, possibly, and it is true, further, that it will not take effect until death, but it is an instrument of title which, in the nature of things, must be made during the lifetime of the testator, and must be signed and witnessed in the manner prescribed by statute during the testator's lifetime. We think these two cases fully establish the doctrine that the testimony of a person cannot be received to establish or to destroy a will where the party testifying would become the recipient of the property of the decedent or some portion thereof. Therefore the chancellor did not err in excluding Mrs. Helm's testimony.

As to the third proposition, we think the proof was sufficient to go to the jury on each of the issues made. While the testimony of Smith and Burris is the best evidence, yet if they cannot be produced, or if, on being produced, do not remember the facts, other evidence may be received to establish the will. Taking the evidence of Judge Orr, Mr. Dorroh, and Mr. Helm, we think the issues should have been submitted to the jury, and the court committed error in refusing to do so. The judgment will be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

STEVENS, J. (specially concurring). I concur in the result reached by the court that the case must be reversed. I concur on all points discussed in the opinion of

the court except the one and important question as to
the competency of Mrs. Mary T. Helm as a witness in her
own behalf. On this point I dissent from the holding
of the court, and it is upon this point alone that I ex-
press my views. The vital question is, Shall a legatee
be admitted as a competent witness to support the will?
According to the previous decisions of this court and
abundant authorities elsewhere, both American and
English, the legatee may testify in support of the will
under which she claims. This question has been ex-
pressly decided by our court at least three times, and
in each instance the legatee was held competent. In
*Kelly et al.* v. *Miller*, 39 Miss. 17, this exact point was
assigned for error. In the statement of the case by the
reporter it is said:

Samuel R. Miller was first introduced by the pro-
pounders of the will, and his testimony was objected to
by the petitioners, because he was the executor, of the
will and principal legatee and devisee under the will, and
was incompetent on the ground of interest. The
objection to his testimony was overruled, and he was
permitted to testify, and a bill of exceptions was taken to
the ruling of the court."

In disposing of this objection our court, by Harris, J.,
said:

"The only error in law assigned, so far as we are able
to ascertain from the arguments of counsel, . . . is
that the testimony of Miller, the devisee, legatee, and
executor under the will, was allowed over the [objec-
tions] of appellant. On this point it is urged that, inas-
much as by our Code (page 434, art. 45) a devise or be-
quest to a subscribing witness to a will is declared to be
void under certain circumstances, any devisee or legatee,
whether a subscribing witness or not, is incompetent to
testify when called to support a will in his favor. There
is certainly no force in this objection."

In addition to article 45 of the Code of 1857 referred

to by the court, making a devise or bequest to a subscribing witness void under the limitations therein mentioned, there was in existence the basis for our present statute making witnesses incompetent to establish their own claims against the estate of a deceased person. Article 190, p. 510, Revised Code of 1857, expressly provided that no person should be a witness to establish his own claim to an amount exceeding fifty dollars against the estate of a deceased person. But in the face of both these statutes Miller was permitted to testify to establish the will.

About twenty-two years after the decision in *Kelly et al.* v. *Miller, supra,* our court expressly decided the point again in *Tucker v. Whitehead,* 59 Miss. 594. The court by CHALMERS, J., said:

"First, there was no error in permitting the proponent, who was the principal legatee under the will, to testify in support of it. *Kelly* v. *Miller,* 39 Miss. 17. The point is decided the same way, though under statutes the phraseology of which is not identical with ours, in Massachusetts and Missouri. *Shailer* v. *Bumstead,* 99 Mass. 112; *Garvin's Adm'r* v. *Williams,* 50 Mo. 206 . . . The contestant was admitted to testify without objection in *Mullins* v. *Cottrell,* 41 Miss. 291; and, though we find the point expressly decided in very few cases, yet an examination shows that it has been quite generally done without objection, both in this country and in England."

In *Covington* v. *Frank,* 77 Miss. 606, 27 So. 1000, our court had for consideration the question whether persons whose heirship is denied are competent persons to prove their relationship. In the reasoning of the court on this point, our court adopted as a correct premise for argument the admitted fact that a legatee or devisee could testify to establish a will, and cited for the argument the two cases above mentioned. The language of the court by TERRAL, J., is significant. Our court there said:

"In *Tucker* v. *Whitehead*, 59 Miss. 594, and in *Kelly* v. *Miller*, 39 Miss. 17, it is held that a person claiming title or right under a will may testify to establish the will by which their title to the estate of the testator is established; a like construction authorizes a person to establish his title to the intestate's property by his own oath. They are parallel cases in every respect. If section 1740 did not exclude Mary Whitehead from testifying in *Tucker* v. *Whitehead,* or Miller from testifying in *Kelly* v. *Miller,* it ought not to exclude Mary Covington and Cornelia Miller from testifying in this case. The title of Mary Whitehead accrued upon the death of Covington. In neither case did the title originate in the lifetime of the testator or of the intestate, and both are competent witnesses."

There is a further significant statement in the opinion of the court in the *Covington Frank Case* that our present statute, at that time section 1740, Code of 1892, is in the nature of an exception to the statute removing the disabilities of parties to a suit existing at common law, and that our present statute "excepts from that right or benefit the persons therein named; and it is a rule in the construction of statutes that exceptions must be strictly construed." And again the court says:

"Neither wife nor child has any interest in the property of the husband and father during his lifetime; dying intestate they would be his heirs, and to prove their relationship to him is to prove their title to his property by descent when cast; but it is not to prove a claim that originated in his lifetime. At the death of a person, dying intestate, *eo instanti* the title of the heirs accrues."

And so I assert with confidence here that Mrs. Helm, the legatee or devisee under the will propounded, had no claim which, in the language of the statute, "originated during the lifetime of such deceased person," the testatrix. Her title and claim is based upon

and through the will. It is a self-evident proposition
that a will does not speak until the testator's death.
The will begins where life ended.  The very nature of
the will, that quality without which it would not be a
will, makes it effective only after the death of the
testator.  So it is that under the literal and plain
language of the statute a legatee is not asserting a
claim which originated in the lifetime of the deceased.
There is no case, unless it be the recent case of *Cooper*
v. *Bell,* 114 Miss. 766, 75 So. 767, decided by Division
A of this court, that has ever declared the· legatee or
devisee an incompetent witness. I cannot give my con-
sent to such holding. It is inconceivable to me that the
legislature in enacting our statute had any such inten-
tion. The claim of the legatee is not ·based upon oral
testimony. The claim is based upon the solemn last will
and testament, a writing which speaks for itself. It
ought not to be objectionable or even against the spirit
of the statute for a legatee to identify this document
or to resent any imputations of fraud or undue influence
or to rebut any testimony offered by the contestant to
that effect. To shut the mouth of the legatee when
there is a contest of the will is to place the legatee in
an attitude where he cannot defend himself.  We are
taught that every one has the right of self-defense and
the right to enjoy life, liberty, property, and the pursuit
of happiness. A legatee should have, and under the
plain terms of our statute does have, the right to
defend the will against unwarranted charges of fraud or
undue influence, and to protect his own reputation and
character.  Our court so ruled in *Jamison* v. *Jamison,*
92 Miss. 469, 46 So. 83, 945. A contrary rule would
permit the contestants to introduce an unscrupulous
witness to testify to a state of facts tending to show
undue influence by the legatee and to place the setting
and circumstances in such way as to require the positive
testimony of the legatee to rebut or overthrow the
effect of such evidence.  In the present case severe and

116 Miss.—47

sweeping charges are made by the contestants of fraud and undue influence on the part of M. T. Helm, even to the extent of charging that the testatrix "was virtually kept a prisoner by the said M. T. Helm." It is not proper here to comment upon the testimony that was introduced, or that possibly will be introduced on a retrial of the case. I do say, however, that the contestants have raised serious issues, the truth of which reflects upon the character of the legatee. In supporting the charge of undue influence generally the *onus* is upon the contestants. Of course I concede that a *prima facie* case must be made by the proponents. The only proof of insanity or mental incapacity thus far shown is that the testatrix was an epileptic. The authorities do not class this as insanity, and the proof tends to show thus far that for many many years after the execution of the will now contested the testatrix was in no worse condition mentally than she was at the time the will was executed. Unless she was mentally capable of executing a will, the testatrix could not be subject to undue influence. Mrs. Helm is shown to have been present in the law office of Judge Orr at the time the will was prepared, but she was in a different room and took no part whatever in suggesting or explaining to the judge what was to be incorporated in the document. It is stated by Mr. Schouler that:

"The mere presence of a beneficiary under a will at its execution is not improper, suspicious, or objectionable, where no proof appears that he actively instigated the business." Schouler on Wills, Executors, and Administrators (5 Ed.), par. 245.

In many instances the testimony of the legatee would be pertinent and important in identifying the document as a last will. To illustrate: A father might execute a holographic will naming his eldest son testator and one of the chief beneficiaries. In the execution of such a will witnesses are not required. May not the eldest son produce the document and identify

the handwriting and vouch for the integrity of the
document? To deny the right in such a case would,
it seems to me, be a shocking denial of justice, and
certainly a result never contemplated by our lawmak-
ers in framing our statute. In the case of *Bookout* v.
*Shannon*, 59 Miss. 378, a physician probated an open
account for services rendered, and produced his orig-
inal books of account as evidence of his claim. The
books could not speak without being sufficiently identi-
fied and vouched for. The physician was permitted,
not only to identify the books, but to testify orally as
to the meaning of certain "hieroglyphics in which the
account was kept." No one but the physician knew
the key that would unlock or interpret these hiero-
glyphics, and the physician gave the key as well as identi-
fied the books. This case well supports the view that
a statute should receive a reasonable construction.
Let us take another illustration. The contestants of
a will might and do frequently introduce testimony as
to the declarations or statements made by the benefi-
ciaries in a will, statements conceived to be against in-
terest. Could not the beneficiaries take the stand and
rebut this character of testimony? The court is here
holding that they are unqualifiedly incompetent as wit-
nesses for or against a will.

The *Whitehead-Kirk Case*, 104 Miss. 776, 61 So.
737, 62 So. 432, 51 L. R. A. (N. S.) 187, Ann. Cas.
1916A, 1051, is not controlling here. The testimony
there condemned was held to be against the spirit, if
not the letter, of the statute. The *Whitehead-Kirk
Case* did not expressly overrule, and did not under-
take to overrule, either one of the other cases which
has expressly decided the point here at issue. On
the contrary, the opinion (104 Miss., bottom of page
823 and top of page 824, 62 So. 432, 433 [51 L. R. A.
(N. S.) 187, Ann. Cas., 1916A, 1051]) expressly said:

"It is also contended that former decisions of this
court are in conflict with our decision of the present

case; but no such decision has been cited, and it is believed that none can be found.''

This statement makes it clear that the court did not intend to overrule any previous decision of this court, but on the contrary, the court intended to say, and I think did say, that the decision in the *Whitehead-Kirk Case* was based upon a state of facts never before considered by this court. The previous decisions of the court were reviewed with the express purpose of demonstrating that the opinion then being delivered was in harmony with previous deliverances of our court. The only case that could possibly be held in conflict with the present opinion is that of *Cooper* v. *Bell,* 114 Miss. 766, 75 So. 767. A close examination of the opinion in *Cooper* v. *Bell* will show that a decision on the point now presented was expressly pretermitted. In the *Cooper-Bell Case* Mrs. Rutland occupied the same position which Mrs. Helm here occupies. She was a legatee, and was offered as a witness to prove that the testator was mentally sound at the time of the execution of the codicil. Under the issues there presented our court said that the rejection of her testimony ''cannot be complained of by appellant for the reason that, whether right or wrong, it was in her favor and against appellee.'' In reference to *Whitehead* v. *Kirk, supra,* I make this further observation, that the primary object and result of the testimony there condemned tended to create a state of facts which would irrevocably fix the claim of the witness, a state of facts existing during the lifetime of the deceased. In this regard the opinion falls within the statutes enacted in many of the states and the decisions of many of the courts condemning the personal conversations or transactions of the witness with the deceased. In addition to the decisions of our court holding that a legatee is competent, many decisions of other courts are listed in the editor's note to *White-*

*head* v. *Kirk,* 51 L. R. A. (N. S.) 187. It is there shown that in the states of Alabama, Arkansas, Delaware, Florida, Georgia, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, New Jersey, Ohio, Pennsylvania, Rhode Island, Tennessee, Texas, Utah, Vermont, and Virginia legatees and devisees are competent witnesses on the contest of a will, and the editor's note state that:

"So far as the form and phraseology of the statute are concerned, none of the other statutes appear so unfavorable as the Mississippi statute to the view adopted in *Whitehead* v. *Kirk.* . . . . There seems to be no authority, outside of Mississippi, for the view that the right to succeed to a decedent's estate, as widow or heir, amounts to 'a claim' against the estate; much less that it amounts to a claim against the estate originating in the lifetime of the decedent."

I quote from these notes to emphasize the fact that our court went a long ways in *Whitehead* v. *Kirk,* and I for one am not in favor of enlarging or extending the force and effect of that opinion. To do so would class wills and the effort of legatees to uphold wills as something unlawful. It tends to characterize a will as *malum prohibitum* and to say to the beneficiary, "Touch not, handle not, the unclean thing." The innocent objects of many a bounty provided in wills frequently know nothing whatever about even the existence of the will until after the testator's death. The beneficiaries are frequently widows, children, and other relatives who are not consulted by the testator and who naturally resent imputations of fraud or improper influence, and who ought not be slandered in court without an opportunity to be heard.

In addition to the almost unbroken line of decisions listed in the L. R. A. notes, *supra,* it is stated in 40 Cyc. p. 2266:

"The statutes excluding evidence in actions by or against representatives or relating to transactions with a decedent are usually held not applicable in proceedings for the probate or contest of a will" and also in Borland on Wills, p. 69:

"The rule of the common law excluding devisees and other parties in interest and the modern statutes making them competent upon condition of relinquishing their claim under the will apply to attesting witnesses only, and not to devisees or legatees who might be called generally as witnesses in a will contest."

I think Mrs. Helm is a competent witness, that her testimony should not have been excluded, and that this is simply an additional reason why the case should be reversed and remanded for a new trial.

Smith, C. J. (concurring). The facts sought to be proven by Mrs. Helm existed, if at all, prior to the death of the testatrix, and, if proven, will establish the validity of the will and consequently of the claim thereunder of the witness to the estate of the testatrix, so that the question here presented comes squarely within the rule announced in *Whitehead* v. *Kirk,* 104 Miss., at page 822, 61 So. 737, 62 So. 432, 51 L. R. A. (N. S.) 187 Ann. Cas. 1916A, 1051, and followed in *Cooper* v. *Bell,* 114 Miss. 766, 75 So. 767, which is that:

"Whenever a witness is offered for the purpose of proving any transaction, act, contract, admission, license, condition, etc. (whatever may be its exact nature), as 'a fact to be proven,' and proven as a fact existing or occurring prior to the death, and the proof of such fact as then existing or occurring is determinative of a claim or right of such witness to or in property of the deceased, and establishes such claim or right directly and finally, there the witness is testifying to establish his claim which originated during the lifetime of such deceased."

The cases of *Kelly* v. *Miller,* 39 Miss. 17; *Tucker* v. *Whitehead,* 59 Miss. 594; *Covington* v. *Frank,* 77 Miss. 606, 27 So. 1000; and *Jamison* v. *Jamison,* 92 Miss. 468, 46 So. 83, 945, here relied upon to support the competency of the witness, were all reviewed in *Whitehead* v. *Kirk,* and what was there said by the court in pointing out that they are not in conflict with the conclusion there reached applies with equal force here.